Woodson *v.* Pool.

WOODSON, Appellant, *vs.* POOL *et al.*, Respondents.

1. Indebtedness at the time of a post-nuptial settlement is evidence of fraud, although there is a diversity of opinion as to the *extent* of indebtedness necessary to invalidate such a settlement.
2. A conveyance for the benefit of a wife, in consideration of dower *previously* relinquished by her, is voluntary as to existing creditors.
3. A parol gift of a slave by a husband to his wife does not change the title.

*Error to Jackson Circuit Court.*

This was a bill in equity in the Jackson Circuit Court by Woodson, an execution purchaser, to declare a settlement of a tract of land in Jackson county, made by James Pool upon his wife and children, void for fraud upon his creditors.

The suit was against the settler, James Pool, James Brown, the trustee, Hall, from whom Pool acquired the land, and Pool's children, the beneficiaries in the trust, the mother having died since the creation of the trust, and Dresser, a tenant of Pool's, in possession of the land.

The facts of the case are about these : At the September term, 1846, of the Jackson Circuit Court, four judgments were rendered against Pool, in favor of different persons, for a total of about $2000. These judgments were founded on notes payable immediately, the earliest of which was dated as far back as August, 1842. The others were dated in August,

1845, and February and June, 1846.   The land in controversy was sold in March, 1848, under execution upon these judgments, and Woodson, the plaintiff, became the purchaser for $130, and took a sheriff's deed in September, 1848.

Hall was the original owner of the land, and sold it in January, 1845, to James Pool for $300, the ground being then unimproved.   At the time of the purchase, Pool and his wife said they wanted to buy it for her and her children, and offered to pay for it with a negro woman, that they said Pool had some years before given to his wife, for a relinquishment of her dower in a lot in Independence that Pool had sold to Fristoe.   Hall declined taking the negro, but told them if they would sell the woman, and take a note from the purchaser, he would take it for the land.   Shortly afterwards, Pool sold the woman for $400, received $100 in cash, and the purchaser's note for $300, payable to himself, which he assigned to Hall to pay for the land, and Hall executed his bond in January, 1845, to James Brown, (Mrs. Pool's brother,) for the title, to be held by him in trust for Mrs. Pool, and after her death, for the use of her children by the present marriage.   Afterwards, in July, 1845, upon the payment of the note, the deed was accordingly made to Brown upon these expressed trusts.

Pool resided at Independence several years before 1843, and owned a house and lot there, which he sold to Fristoe, and removed to Arkansas.   He returned to Independence in 1843, where he has since resided.   In January, 1845, the only property he owned was the negro woman sold to pay for the land in controversy, her child, two or three years old, his tools and shop materials, and a house and lot in Independence that he had previously bought of Parker, and sold to Stone in August, 1845.   Pool's business was wagon making and blacksmithing, which he carried on quite extensively in shops on his lot. He sold his lot, shop and tools to Stone August 15th, 1845, for $2200, $500 of which he received, and the balance was paid to Parker in payment of what he owed Parker.   After selling this property, Pool commenced improving the land in contro-

versy, built a dwelling house and shop on it, for which he expended $1500, and resided and carried on his business there; and when bought by the plaintiff under execution the property was worth $1500. Pool was always in debt, hard pressed for money, reckless about contracting debts, and never able to pay his debts if they had been pressed against him. He was deeply in debt in January, 1845, unable then to pay his liabilities, and at last utterly failed, leaving a large mass of debts yet unpaid.

Pool put in no answer to the bill. The mother died before the commencement of the suit, and the children put in formal answers, merely stating that they had no knowledge of the transactions, and calling for strict proof. Upon the trial, no proof was given on the part of the defendants. The court dismissed the plaintiff's bill, and he sued out a writ of error.

*Leonard*, for plaintiff in error. The settlement is voluntary, and the plaintiff stands in the place of a prior creditor, and therefore it is void as to him, as a shere matter of law. *Reade* v. *Livingston*, 3 J. C. R. 491–500. This rule has been adhered to, in all its rigor, in several states; (*Miller* v. *Thompson*, 3 Porter, 196. *O'Daniel* v. *Crawford*, 4 Dev. 197. *Bogard* v. *Saidly*, 4 S. & M. 302. *Izzard* v. *Izzard*, 1 Bailey's Eq. Rep. 228–36;) and although it has been relaxed in others, this cause cannot be brought within any exception that has yet been recognized. *Hutchison* v. *Kelly*, 1 Robinson's (Virg.) Rep. 128–142. *Sexton* v. *Wheaton*, 8 Wheat. 229. *Vanwick* v. *Seward*, 18 Wend. Rep. 398–402. *Beckhouse* v. *Jett*, 1 Brock. Rep. 510–11. *Hopkirk* v. *Randolph*, 2 Brock. Rep. 137. *Chamberlayne* v. *Semple*, 2 Rand. (Va.) Rep. 399. *How* v. *Ward*, 4 Greenl. Rep. 198. The plaintiff stands in the place of the creditors under whose judgments he purchased, clothed with all their rights; so that, if the settlement be void as to any one of them, it is, as a shere matter of law, void as to him. One of the judgments was founded upon a note given as early as August, 1842, and the fair presumption is, that all of them were founded upon debts

contracted prior to the settlement. The pretended considera-tion for the settlement is a part of the proceeds of a negro woman, bought by the wife from her husband, for the alleged relinquishment of her dower in certain real estate sold many years before. There is no evidence of any such purchase, other than the declarations of the parties themselves, made too, at the very moment they were putting into execution the fraud impu-ted to them. If such a purchase were in fact made, it was clearly fraudulent, and did not pass the property against the husband's creditors, prior or subsequent. There was no change of possession, the husband used the property as before, and obtained credit on his apparent ownership, and finally sold it as his own. Another view of this case is this : the settle-ment was made to secure the land bought, and the improvements afterwards put upon it with the husband's means, for the benefit of the husband and wife during their lives, and afterwards for the use of their children. The effect of this settlement was, to place the husband's means beyond the reach of his creditors, and yet he had the enjoyment of them. The law imputes bad faith when the direct effect of a transaction is to defraud. To save this transaction then from the just imputation of fraud, those who claim under it must show affirmatively a valuable consid-eration and good faith. A *fair* consideration must have been paid. A wife's contingent right of dower in an ordinary dwel-ling house in a country village, even if worth $300, will not relieve from the imputation of fraud a settlement upon the wife and children, of an insolvent husband's property, to the extent of $1500.

*Napton*, for defendants in error. 1. The land in contro-versy was purchased with the proceeds of a negro girl given by Pool to his wife in consideration of a relinquishment of her dower in certain real estate. This negro girl, or the money substituted for her, however either may have been subject to the husband's debts, was yet, in equity and morals, the property of the wife, and having assumed a shape exempting it from legal process, where it ought to have been, a court of equity will

never disturb it and put it back in a position to be reached. 8 Watts & Serg. 413. The *Bank* v. *Brown*, Riley's Ch. Rep. 131-5. 1 Am. Lead. Cases, 65. 2. But even if this settlement were voluntary, the testimony shows that when it was made, there was but one debt, and this bore a very small proportion to the mass of Pool's property, and that Pool was entirely solvent. 3. There is no evidence in this case of any thing like fraud in fact, unless it is fraudulent for a mechanic, extensively engaged in a hazardous enterprise, to place out of the reach of his creditors a small lot of ground containing a shelter for his family. 4 Mason, 444. 4 Metcalf, 486.

SCOTT, Judge, delivered the opinion of the court.

1. The second section of the act concerning fraudulent conveyances, embodies the principle which must be decisive of this controversy. In the construction of this section, it has always been held, that indebtedness, at the time of a voluntary conveyance was evidence of fraud. Some diversity of opinion has existed as to the extent of the indebtedness, in some cases, as almost every man must be indebted for some small amounts. But this case leaves no doubt that the indebtedness was to such an extent as must have affected the *bona fides* of the transaction. One of the debts for which the land was sold existed long anterior to the conveyance, and the evidence clearly shows the long continued previous embarrassment of the grantor, which ultimately resulted in notorious insolvency.

2. The only pretence by which the conveyance can be upheld is, that it was for a valuable consideration. There can be no question but that a wife's relinquishment of her dower is a sufficient consideration to support a suitable conveyance to her for such relinquishment. But to make an assignment of the right to dower available as a consideration, it must be effected in compliance with the forms of the law. If the right to dower has already been assigned, a conveyance, in consideration of such an act previously done, would be voluntary as to existing creditors, although binding between the parties.

3. There is no evidence in the record that the slave was given to Mrs. Pool, in consideration of a relinquishment of dower. If a husband says to his wife, I give you a slave, what is effected in law by such a form of conveyance? Are not the parties and the thing conveyed, after such a pretended gift or conveyance, in the same situation as they were before it was attempted? There is none but hearsay evidence, and that from an interested source, that there was any conveyance of the slave to Mrs. Pool, and even that stands contradicted by the subsequent conduct of Pool (the husband) towards a child of the slave alleged to be conveyed. The instrument evidencing the conveyance of the lot to Mrs. Pool, unsupported by any testimony, would scarcely be regarded as sufficient to defeat the claims of creditors. In no view of the case can the decree of the court below be sustained.

The other judges concurring, the decree will be reversed, and the cause remanded.