BARBEE AND WIFE, Respondents, v. WIMER *et al.*, Appellants.

1. Debts contracted by a husband after property has come into the possession of his wife by descent, &c., may be enforced against that property. It is not exempted from execution by the act of March 5, 1849. (Sess. Acts, 1849, p. 67.)

*Appeal from St. Louis Court of Common Pleas.*

This was an action in behalf of Elvira Barbee to recover damages for an alleged unlawful seizure by defendant Wimer, as sheriff of St. Louis county, by the order and direction of the other defendants, of a negro slave alleged to be the sole and separate property of said Elvira Barbee. It was alleged in the petition that on the 16th day of August, 1851, William Triplet, the father of the said Elvira, gave to her the slave in question as her separate property free from the control of her husband, not subject to or liable for any debts, claims or demands contracted or to be contracted by the said husband, Andrew B. Barbee.

The defendants set up that said slave was levied on and sold by John M. Wimer, as sheriff, on the 11th of January, 1853, by virtue of two several executions—one issued under a judgment, dated September 23, 1852, against Andrew B. Barbee and Marshall Ring, founded on a promissory note executed by said Barbee and Ring—the other, issued under a judgment dated February 13, 1852, against said Barbee,

founded on a promissory note dated January 15th, 1852, for $89.65. Defendants also allege that the proceeds of the sale of said negro slave—$500—were applied in payment of said two executions; that the remainder was applied in payment of a third execution against said Barbee issued January 7, 1853 ; also that the deed of gift mentioned in the petition was fraudulent and void.

On the trial evidence was introduced showing and tending to show that the plaintiff Elvira Barbee was married to Andrew B. Barbee January 22, 1845 ; that by deed of gift dated August 16, 1851, William Triplett, father of said Elvira, gave the slave in controversy to her and her children " free from the control of her husband and not subject to or liable for any debts, dues, claims or demands contracted or to be hereafter contracted by him, the said Andrew B. Barbee, but to be held and enjoyed as the sole and exclusive property of her, the said Elvira;" that soon after the marriage of said Barbee said slave went to live with himself and wife, and remained with them, with slight intermissions, until levied on and sold as stated in the answer ; that said Elvira always claimed the slave in controversy as her own. The evidence tended to show that previous to the execution of the deed of gift the slave was held by Barbee by way of a loan from Triplett.

The court, of its own motion, gave the following instructions to the jury : " 1. If the jury believe from the evidence that the instrument of writing purporting to have been executed by Wm. Triplett, and read in evidence, was executed by him and delivered to Mrs. Barbee or her husband before the alleged seizure of the slave conveyed by said instrument, and that the possession of said slave was delivered to and retained by Mrs. Barbee or her husband under said instrument, and that the defendant Wimer seized and carried away said slave, then the plaintiffs are entitled to recover against said Wimer, unless it is further shown by the evidence that. for five years prior to said instrument said slave had been in the continuous adverse possession of said Andrew or his wife,,

10—VOL. XXVII.

or that prior to the execution and delivery of said instrument said Triplett had given said slave to Mrs. Barbee or her husband; and if said Wimer so seized and carried away as aforesaid said slave by the direction of Henderson, one of the defendants, then Henderson is equally liable with Wimer; otherwise, Henderson is not liable. 2. The measure of damages in this case, if the jury find for the plaintiffs, is the value of the slave, and the jury may allow interest at the rate of six per cent. per year from the time the slave was so taken from the plaintiffs. If Triplett, before the execution of the instrument in writing read in evidence, had given the said slave to said Andrew or his wife, and subsequent to said gift said slave was seized and taken away by virtue of or under an execution against said Andrew for a debt by him contracted subsequent to said gift, then the jury will find for the defendants; or if, prior to the execution and delivery of said instrument, said Andrew had had five years continuous adverse possession of said slave, and the same was seized and taken away by defendants under or by virtue of a judgment and execution against said Andrew, the jury should find for the defendants. 3. If the said slave was given to Mrs. Barbee unconditionally prior to the execution and delivery of the instrument in writing dated August 16th, 1851, and she or her husband had possession under such an absolute gift before the execution and delivery of said instrument, then said slave could not be seized under an execution against said Andrew issued upon a judgment recovered against said Andrew upon a debt contracted prior to said absolute gift, but it was liable to be seized upon execution under a judgment recovered upon a debt contracted after such an absolute gift, and the possession of the property by the donee. 4. If the slave in question was loaned by Triplett to said Andrew or his wife, and possession of said slave remained with said Andrew or his wife for the space of five years, then, as between said Triplett and said Andrew and wife the title to said property was still in said Triplett; and at any time thereafter and before the sale of the slave by said Andrew and

wife, or before the issuing of an execution against said Andrew or his wife, the said Triplett could make a valid disposition of the slave and convey the same."

The court refused various instructions asked by defendants. The jury found for plaintiffs.

*Cline & Jamison*, for appellants.

I. The deed of gift gave to Elvira Barbee a life interest with remainder to her children. The second instruction was therefore wrong and the damages excessive. (24 Mo. 182.) The court erred in giving the first instruction. The deed of gift was fraudulent as to the creditors of Barbee. It was not recorded. The slave was in his possession from the spring of 1845 to January, 1853. There was no change of possession when the said deed was made. Credit was given to him on account of his possession of said slave. (2 McCord Ch. 131; 1 Bay, 232; 2 Nott & McCord, 93.)

*Carroll*, for respondents, cited Murray v. Fox, 11 Mo. 555; Cook v. Clippard, 12 Mo. 379.

SCOTT, Judge, delivered the opinion of the court.

This case will be considered in two points of view; in the one, as it stands affected by the act of March 5th, 1849, entitled "An act to amend an 'Act to regulate executions;'" in the other, as it remains independent of the provisions of that act.

In viewing this controversy as influenced by the act of 1849, to which reference has been made, we find that only one of the debts, for the satisfaction of which the property in controversy was sold, accrued before the date of the bill of sale or deed of gift, which was the 16th of August, 1851. There is nothing in the act of 1849 which prevents the property belonging to married women before, or coming to them during, the marriage from being taken in satisfaction of debts contracted by the husband after the property has come into the wife's possession. The statute only exempts the property coming in right of the wife from the payment of the

debts before the marriage in case of property coming by and at the time of marriage, but property coming in right of the wife after marriage is only exempt from debts contracted previous to the time at which it comes into her possession; or, which is the same thing, into the possession of the husband. Debts contracted after the property has come to the possession of the wife are not within the purview of the statute, and may be enforced against that property. Then, if the plaintiff claims under the deed of gift, as at least one of the debts on which the executions were founded was contracted after the property came into the possession of the wife by virtue of that instrument, it was lawfully sold.

If we regard the slave as a gift by the father to his daughter, from the time she left his house in October or November, 1845, accompanied by the slave, then it is obvious that the act of 1849 had nothing to do with the transaction, as the gift was perfected before that statute was enacted, and all the debts would have been contracted after the property of the wife had came to her possession. If the original dealing in relation to the slave in 1845 be regarded as a loan, as it should be if the parties to it so desire and are willing, then it would continue so until the date of the deed of gift in August, 1851; and in such event it has been shown how the transaction would be affected in reference to the act of 1849.

But, laying out of consideration the act of 1849, it may be said that if the original delivery of the slave was a loan and so intended, it continued such until the date of the deed of gift, and, although the slave had remained more than five years in the possession of the loanee, yet, as at the time of the gift no creditor or purchaser had acquired any right to or interest in the slave by suing out an execution or otherwise, the original loan then terminated, and, the transaction ceasing to be within the fifth section of the act concerning fraudulent conveyances (R. C. 1845, p. ——), a creditor would afterwards have no right to seize the property under execution, as the loan had ceased before his execution became a lien on it, which from that time became the sole and exclu-

Barbee v. Wimer.

sive property of the wife by virtue of the bill of sale or deed of gift. In the case of Meaux v. Caldwell, 2 Bibb, 244, slaves were put in possession of a son-in-law, with whom they remained ten or eleven years, when they were taken out of his possession and other slaves were put in their place. The creditors of the son-in-law, whose debts were contracted whilst the first mentioned slaves were in his possession, seized them under execution, and, on a bill filed to enjoin the sale, the slaves were held subject to the execution. It was said that the lender of the slaves having acquired possession of them before the execution was levied, did not change the nature of the transaction; that five years' possession gave an absolute right so far as creditors and purchasers were concerned. So in the case of Pate v. Baker, 8 Leigh, 80, it was held that, after a loan to a person with whom or with those claiming under him possession had remained five years, a deed was made by the lender declaring the original loan and continuing it, but the deed was never admitted to record, it was held that the deed could not affect a creditor of the person in possession and ought not to be received as evidence against such creditor. (Gay v. Mosely, 2 Munf. 543.)

The case does not require that we should express an opinion on the questions whether if the bill of sale had been recorded, and the debts afterwards contracted, the property would have been subject to them; or, whether, when the possession has remained with the loanee, or with those claiming under him, for five years, and is then resumed by the lender, the possession must continue with the lender the period of five years from the time it was resumed before the title will be revested in the lender as against a creditor of the loanee.

Napton, Judge, concurring, the judgment is reversed and the cause remanded. Judge Richardson did not sit, having been of counsel.