GABRIEL, *Appellant*, v. MULLEN.

In Banc, June 20, 1892.

1. ·Husband and Wife: NECESSARIES FOR FAMILY: JUDGMENT AGAINST HUSBAND: EXECUTION AGAINST WIFE: SEPARATE PROPERTY. Under Revised Statutes, 1879, section 3269, which provides that the wife's personalty shall be her separate property, and shall not be liable to be taken for the debts of her husband, but shall be subject to execution for any debt of the husband for necessaries for the wife or family, her separate personalty may be seized on execution under a judgment against the husband alone, where the judgment debt is for such necessaries.

2. ——: ——: ——: ——: CONSTITUTION. Such seizure of the wife's property does not violate her constitutional right to "due process of law."

3. ———: ———: MEDICAL SERVICES. Medical services to the husband and children are "necessaries for the family" within the meaning of that statute.

4. ———: ———. The giving of a note by the husband for necessaries does not change the nature of the debt or take it out of the operation of the statute referred to.

5. Statute: CONSTRUCTION. In the construction of a statute it is proper to consider the prior state of the law on the subject.

*Appeal from Jasper Circuit Court.*—HON. M. G. McGREGOR, Judge.

AFFIRMED.

*Robinson & Crow* for appellant.

(1) There was no judgment against Jennie R. Gabriel, and no execution issued against her, and, therefore, no levy could be made on her property under the execution against her husband, John F. Gabriel, held by defendant Mullen. The property of plaintiff could only be taken from her by due process of law, and her property is not subject to an execution issued upon a judgment rendered against her husband in a proceeding to which she was not a party. *State to use v. Armstrong*, 25 Mo. App. 532; *Gage v. Gates*, 62 Mo. 412; *Lincoln v. Rowe*, 64 Mo. 138. And in such case it is immaterial that the debt was for necessaries furnished the family. *State to use v. Armstrong*, 25 Mo. App. 532. (2) If Jennie R. Gabriel had been a party to the suit, the judgment against her would have been a legal nullity, as she was a married woman, and, hence, an execution would not have reached her property. *Gage v. Gates*, 62 Mo. 412; *Lincoln v. Rowe*, 64 Mo. 139. Therefore, instructions 2 and 3 asked by plaintiff and refused by the court should have been given. (3) And if Jennie R. Gabriel's property had been liable for the debt for which the note was given it could only be

reached by an appropriate proceeding in equity for that purpose.  *Gage v. Gates*, 62 Mo. 417.  (4)  The court should have given instruction, numbered 1, asked by plaintiff and refused by the court.  When the wife's estate is held liable under a statute for necessaries, the liability only extends to such as are regarded necessaries for the family, and not to anything which goes to the individual or exclusive use of the husband.  Kelley's Contracts of Married Women, p. 177; *Hyley v. Collins*, 9 Ga. 224; *Pipkin v. Jones*, 52 Ala. 162; *McGee v. White*, 23 Tex. 180; *Swigrort v. Gardanne*, 9 La. Ann. 4.  And it has been held that the liability of the wife's property for necessaries does not extend to medicines and medical care given the wife.  Kelley's Contracts of Married Women, p. 178; *May v. Smith*, 48 Ala. 483; *Yates v. Lervey*, 65 Me. 221; *Thomas v. Passage*, 54 Ind. 114.  (5)  The general verdict should be set aside when inconsistent with the special findings.  Session Acts, 1885, p. 214; 15 N. W. Rep. 597.  Therefore, the motion of plaintiff for judgment on the special findings should have been sustained by the court.

*T. B. Haughawout* for respondent.

DIVISION ONE.

BARCLAY, J.—This is a statutory action in the nature of replevin to recover possession of a roan mare as the property of the plaintiff, Mrs. Jennie R. Gabriel, a married woman.  The defendant, a constable, asserted by his answer a special property in the animal by virtue of a levy upon an execution against John F. Gabriel, husband of the present plaintiff.

Plaintiff obtained possession of the property under an order of delivery, having given the usual bond in replevin therefor.

The case was tried before a jury; a verdict for defendant resulted, and plaintiff appealed to the Kansas City court of appeals.

The latter transferred it to this court under the provisions of the constitution. Amendment of 1884, sec. 6.

The argument here, and the proceedings in the trial court, indicate that the material facts are mutually conceded.

The mare was the property of Mrs. Gabriel, a gift from her father. The levy upon it by defendant, May 22, 1885, was under a judgment of the day before in favor of Dr. August Rhodes against Mr. Gabriel alone, upon a note of the latter, given for an indebtedness for medical services in 1876 to Mr. and Mrs. Gabriel and her children. Mrs. Gabriel was not named in the note or in the judgment.

I.   Upon these facts it is claimed by plaintiff that the mare of Mrs. Gabriel was not subject to levy for the debt of her husband, even though created for necessaries for the wife and family.

The statute of 1875 declares that the personal property of the wife shall "be and remain her separate property and under her sole control, and shall not be liable to be taken by any process of law for the debts of the husband;   *   *   *   but such property shall be subject *to execution*   *   *   *   for any debt or liability of her husband created for necessaries for the wife or family." Revised Statutes, 1879, sec. 3296.

Prior to this enactment the wife's personalty in possession became answerable upon her marriage for all her husband's debts of every nature.

When the legislature saw fit to create a statutory separate estate in such property and vest it in her, free of liability "to be taken by any process of law for the debts of the husband," it had the power to determine,

as it did, the extent of the new estate, by providing that such property should remain (as it had been) "subject to execution" for the particular class of debts indicated.

This court has already held that a wife, owning a sole and separate equitable estate, might, nevertheless, charge her husband for necessaries for her support. *Miller v. Brown* (1871), 47 Mo. 508.

In view of his personal liability for such necessaries, the legislature no doubt considered it proper and just that her personal property as well as his should continue liable therefor. So it placed the limitation mentioned upon her separate ownership of it.

That such was the intent of this legislation we think its terms plainly show.

II. But it appears to be supposed that to permit the enforcement of such a liability by means of an ordinary execution on a judgment against the husband would violate some right of the wife to have a "day in court."

We have already seen that the statute not merely charges her property with a liability for such necessaries, but expressly subjects it "to execution" for that kind of a debt "of her husband." This is precisely the mode in which such property was reached for the satisfaction of general liabilities of the husband, before the passage of the amendment of 1875. *Barbee v. Wimer* (1858), 27 Mo. 140.

In construing any statute it is proper and often useful to consider the state of the law existing at its enactment as casting light on the intended scope of the change made by it.

Here it seems that the former liability of the wife's property, as to the debts of her husband for family necessaries, was designed to continue. Then what more natural and reasonable than that the existing

mode of enforcing such liability should likewise be continued as the language of the statute imports?

But is it in harmony with the constitution to so provide? Would it be "due process of law" to permit her property to be seized upon an execution against the husband for such a debt without a previous hearing and judgment to which the wife was a party?

Of course she always has the right to try the issue whether or not the execution debt was in fact created for such necessaries.

She is not concluded on that issue by a judgment against her husband to which she is no party; and, hence, there is nothing in the suggestion that she might be bound by his collusive action with the creditor in allowing the judgment to go.

Since the act of 1883 (Session Acts, 1883, p. 113), she may sue "in her own name and without joining her husband," and may herself raise the issue as to such necessaries in several ways; by replevin (as in the case at bar), or by notice to the officer of her claim, and an action upon his bond, or against him alone for trespass; perhaps, in other forms.

But it is nothing new or abnormal in legal procedure that property should be made liable to a particular charge, and subjected to seizure accordingly without a prior hearing as to the facts creating such charge.

It rests in the sound discretion of the legislature to permit this within constitutional limits. Familiar illustrations of such proceedings are close at hand.

Thus, where one has received without evil motive a gift of personal property from another, who turns out to have been then insolvent, a creditor of the latter (on obtaining a judgment against him) may levy on the subject of the gift, in possession of the donee, without any previous action against him to establish the fact of such gift.

In such case the title passes out of the giver; but, as to his existing creditors, however honest in fact the transaction may be, the title only passes subject to their just demands against it by force of positive law. Revised Statutes, 1889, sec. 5170; *Woodson v. Pool* (1854), 19 Mo. 340; *Potter v. McDonald* (1860), 31 Mo. 62. Similar consequences follow where a person buys personalty with a purpose to aid the seller in defrauding his creditors. Though the title may pass as between the immediate parties, the creditors, upon an execution against the seller, may take it from the buyer in satisfaction of their claims without any prior legal ceremony to adjudicate the facts mentioned.

Again, where one acquires, in good faith and for full value, personal property of the defendant in a justice's judgment, after the execution thereon has been placed in the hands of the constable, he takes the title subject to the charge created by the execution, which may be enforced by a diligent creditor by mere levy upon the property in the possession of the purchaser. *State ex rel. v. Blundin* (1862), 32 Mo. 387. It was never supposed to be necessary to begin a new action against the latter to obtain another judgment asserting such lien.

The law itself impresses these limitations upon the ownership of property in the circumstances indicated in these examples.

In the case of a married woman it imposes upon her statutory title to personalty the burden of responding to an execution against the husband upon a debt created for family necessaries. The statute fixes that liability in the nature of a charge upon her property where certain essential facts exist. Their existence she may deny and contest, if desired, in various modes, already alluded to; but there is nothing of an unconstitutional nature in the law creating such a charge.

It is "due process of law," as much so as are statutes declaring that, upon certain specified facts, a charge, by way of lien, shall arise upon personal property in whosesoever hands it may be, to secure a debt due by another. *Spofford v. True* (1851), 33 Maine, 233; *Sims v. Bradford* (1883), 12 Lea, 434; *Winslow v. Urquhar* (1875), 39 Wis. 260.

The liability of the wife's personal estate to respond to an execution for the husband's judgment debt for family necessaries is nothing but a statutory qualification or condition annexed to the separate ownership conferred. It is not an entirely extraordinary condition.

Formerly under an Iowa statute the wife was invested with a qualified separate estate in personalty, on condition that an inventory of such property should be filed for public record, in default of which the property, if in the husband's custody, should be liable in some circumstances for his general debts; and, in several cases, the supreme court approved the enforcement of such liability by direct levy on the wife's property, on execution against the husband alone, without any preliminary proceeding against the wife, because the statute so provided. *Williams v. Brown* (1869), 28 Iowa, 247; *Presnell v. Herbert* (1872), 34 Iowa, 539.

Again, in Massachusetts, a statute made the wife's personal and real property separate estate, and declared it not liable to be taken for his debts; but with the condition that, if she carried on business on her own account, a certain certificate to that effect should be filed, in default of which the property employed in such business should "be liable to be attached as the property of the husband and to be taken on execution against him;" and it was held that, where the facts mentioned in the law appeared, the liability so arising was enforceable in the manner the statute specified, namely, by simple levy

on the wife's property. *Chapman v. Briggs* (1866), 11 Allen, 546; *Dawes v. Rodier* (1878), 125 Mass. 421; *Snow v. Sheldon* (1879), 126 Mass. 332.

We have mentioned these cases from Iowa and Massachusetts, not as having an authoritative bearing on the point directly presented for a ruling in the case at bar, but merely to show that the statutory conditions and limitations, ingrafted upon such separate estates, are accorded, as they should be accorded, like effect and force as the other provisions of such legislation.

We do not think the imposition of the condition contained in the Missouri statute under discussion can properly be regarded as having the effect of depriving the wife of anything "without due process of law." As to claims of the kind named in the statute no separate rights attach, because the law itself so declares.

III. The "necessaries" here in question consisted of medical attendance upon Mrs. Gabriel, her husband and children. All these persons we regard as included in the term "family," used in this statute; and that the services described are "necessaries" within its meaning, we consider settled by the ruling on that point in *Alexander v. Lydick* (1883), 80 Mo. 341. That decision also determines that the giving of a note by the husband for such indebtedness, without more, does not change the nature of the latter, or prevent the application of the statute in reaching property of the wife.

IV. In the case just cited it was unanimously held by this court (approving a well-considered opinion of Commissioner MARTIN in which Commissioners PHILIPS and EWING concurred), that the effect of section 3295 of the revision of 1879 (same as section 6868 of 1889) was to expressly subject the issues and products of the wife's separate statutory estate in land to an execution against the husband for necessaries for the

family. It will be seen that the language, as to liability to such an execution, is the same in section 6868 (of 1889), and in the next following section which forms the subject-matter of present consideration. That ruling, therefore, bears directly upon the case now before us; but its force was not recognized in the more recent opinion of the second division of this court by our learned brother MACFARLANE in *Bedsworth v. Bowman*, 104 Mo. 44, discussing the same question.

The foregoing comments on the case at bar sufficiently indicate our difference from the views expressed in the decision just mentioned, except, perhaps, on one point. The judgment of the second division seems to be based, in part, on inferences from decisions in other states, the statutes of which are said to be "similar to the one under consideration."

We have been unable to discover the similarity.

The statute of Iowa, under which *Lawrence v. Sinnamon* (1865), 24 Iowa, 80, was decided, and which has been repeated, in almost the same words, omitting the phrase in brackets, in Illinois (Acts of 1874, now chapter 68, Revised Statutes, 1891, sec. 15) and Oregon (*Phipps v. Kelley* (1885), 12 Ore. 215) provides, that "the expenses of the family and the education of the children [and such other obligations as come within the equity of this provision] are chargeable upon the property of both husband and wife or of either of them, and in relation thereto they may be sued jointly or separately" (Revised Statutes, Iowa, 1860, sec. 2507; same as section 2214, Code of 1873); while the section next preceding declares that the contracts and liabilities of the wife may be enforced "by or against her to the same extent and in the same manner as if she were unmarried." Revised Statutes, Iowa, 1860, sec. 2506; same as section 2213, Code of 1873.

Provisions of the Alabama code, in force when *Childress v. Mann* (1858), 33 Ala. 207, was announced, were as follows:

"1987. For all contracts for articles of comfort and support of the household, suitable to the degree and condition in life of the family, and for which the husband would be responsible at common law, the separate estate of the wife is liable; to be enforced by action at law against the husband alone or against the husband and wife jointly." Code of 1852, same as section 2376 in Code of 1867.

"1988. If suit is brought against the husband alone, upon any such contract, and execution is returned 'not satisfied,' the separate estate of the wife may be sold, by order of the court, for the satisfaction of the judgment; ten days' notice in writing being given to the wife of the intended motion." Code of 1852, same as section 2377 in Code of 1867.

Under such legislation the supreme court held that, as the wife's liability was statutory, the specific remedy pointed out by the law was exclusive (*Janney v. Buell* (1876), 55 Ala. 408); but there is no intimation in the Alabama decisions that the statutory method of reaching her separate property is invalid.

The law of Pennsylvania, at the time of the decisions in *Sawtell's Appeal* (1877), 84 Pa. St. 310, and *Hoff v. Koerper* (1883), 103 Pa. St. 396, after making "every species and description of property" of the wife separate estate, further provided:

"In all cases where debt may be contracted for the support and maintenance of the family of any married woman, it shall be lawful for the creditor in such case to institute suit against the husband and wife for the price of such necessaries, and, after obtaining a judgment, have an execution against the husband

alone; and, if no property of the said husband be found, the officer executing the writ shall so return, and thereupon an *alias* execution may be issued, which may be levied upon and satisfied out of the separate property of the wife, secured to her under the provisions of the first section of this act; *provided* that judgment shall not be rendered against the wife in such joint action, unless it shall have been proved that the debt sued for in such action was contracted by the wife or incurred for articles necessary for the support of the family of the said husband and wife." Acts of 1848; Brightly's Purdon's Digest [11 Ed.] sec. 15, p. 1151.

The courts of that state have held that the word "*or*," in the last phrase, should be read as "*and;*" and, consequently, that the wife must participate in creating such an indebtedness to make it a charge against her separate estate at all. *Murray v. Keys* (1860), 35 Pa. St. 334.

A statute of Mississippi was also mentioned in this connection by our brother Macfarlane, but as no case from that state was cited, and the law, on this topic, has undergone important changes there, as elsewhere, we cannot know what legislation was in view; but we see nothing in the local statutes relating to this subject (Code of 1857, arts. 25, 26, p. 336; sections 1780 and 1783 of the Code of 1871, and section 1167 of Code 1880) which bears any similarity to that feature of our law now calling for construction.

Between the statutes which have been quoted and ours this difference will be noted readily; the former provide methods of charging the property of both spouses for certain family indebtedness quite unlike the mode indicated by the Missouri statute. By the latter the wife's personalty is pronounced "subject to execution for the debt or liability of her husband," created for such necessaries, just as it had been before the

separate statutory estate in such property came into existence.

We have found no decision in any other state holding that such a limitation on her statutory estate involves any violation of her constitutional rights, and we do not regard it as having such effect.

We think that our able and learned associates of the second division were in error in ruling otherwise in *Bedsworth v. Bowman* (1891), 104 Mo. 44; and that that decision should not be followed as a precedent.

The judgment of the circuit court should be affirmed; and the cause is remanded to the Kansas City court of appeals with directions to enter a judgment to that effect. SHERWOOD, C. J., dissents; BLACK and BRACE, JJ., concur.

## IN BANC.

PER CURIAM.—BLACK, BRACE and THOMAS, JJ., concur in the foregoing opinion; SHERWOOD, C. J., GANTT and MACFARLANE, JJ., dissent.

MACFARLANE, J.—I am not able to agree to the conclusion reached in the case by the majority of the court, that the personal property held by a married woman, as "her separate property" under the statute (Revised Statutes, 1879, sec. 3296) can be taken and sold under execution upon a judgment against the husband alone, and without notice to her, though the debt for which the judgment was rendered was created by the husband "for necessaries for the wife or family." I adhere to what was said by division 2 of this court in the case of *Bedsworth v. Bowman*, 104 Mo. 44. I wish to supplement what was said in that case with a few brief observations on the construction of the statute, omitting any further discussion or consideration of the right of the legislature to provide for taking

the property of either man or woman "without due process of the law," which we insist this statute does under the construction given by the majority.

The statute provides that the personal property of the wife shall "be and remain her separate property and under her sole control, and shall not be liable to be taken by any process of law for the debts of the husband." It is provided, however, that "such property shall be subject to execution for the payment of the debts of the wife contracted before marriage, and for any debt or liability of her husband, created for necessaries of the wife or family." It is argued that, as previous to the statute, the personal property of the wife, in possession of the husband, was subject to execution against him, the legislature intended to provide that such property should remain as it had been, "subject to execution" for the class of debts indicated, and that it was natural and reasonable that the existing mode of enforcing such liability should likewise be continued.

The argument is clearly unsound for the reason that previous to this statute the separate property of the wife was not liable for the debts created by the husband, and the ownership of her legal personal property was transferred to the husband upon coming into his possession during coverture, and could be taken under execution against him, for the reason that it was *his* property and subject to execution for any of his debts.

Again the statute makes this separate statutory property of the wife subject to execution for debts of two classes, viz., the *ante*-nuptial debts of the wife, and the debts of the wife created by the husband for necessaries for her and family.

It is shown in the *Bedsworth case*, *supra*, that previous to the statute the separate property of the wife could only be charged for her debts by a proceeding

in equity against herself and husband.   It is equally
well settled, that, at common law, the creditor was
required to bring his suit, for recovery from the
husband of a debt contracted by the wife before
marriage, against both husband and wife as joint
defendants.   1 Chitty on Contracts, 57; 1 Bishop on
Married Women, sec. 335, note 3; *Benjamin v. Bartlett*,
3 Mo. 86.

It is but natural and reasonable that the existing
mode of enforcing the liability of the husband for the
*ante*-nuptial debts of the wife and of charging her sepa-
rate property for family necessaries should have been
continued in force under the statute, rather than by a
proceeding of doubtful constitutionality against the
husband alone.

I am unable to call to mind a single condition
under which the personal property belonging to the
wife can be made subject to execution against the
husband alone.   A levy upon property of an execution
debtor held by and in the name of another for the
debtor's use, under a resulting trust arising upon a
fraudulent transfer, bears no analogy to this case.   In
such case, as between the debtor and his creditors, the
property in equity continues to be that of the debtor
notwithstanding the transfer.   Such is not the case
under the married woman's act.   Under it the husband
never takes an interest in the property and there is,
consequently, no transfer from husband to wife.

It is said again that it was entirely competent, and
within the power of the legislature, when freeing the
property of the wife from the dominion of the husband
to impose upon it the burden or charge for the debts of
the husband contracted for necessaries for her and
family; and that it was equally in the power of the leg-
islature to authorize the subjection of such property to
execution against the husband without process of law

as to her.    Without stopping here to combat the correctness of that proposition we are well satisfied that such was not the intention of the legislature.    No such intention is expressed and one so unreasonable could not be implied.    Such construction should be given the act as will make it operate justly, and, if the language will bear it, in harmony with general principles of law.    Such rule would reject a construction which would require the rendition of a judgment first and give a limited trial afterwards, *provided her financial standing was sufficient to enable her to give the requisite bond.*

What is the reasonable and fair construction of this statute?    It will be observed that the section in the first sentence frees the property of the wife from all marital claims of the husband as they had existed before that time; under that part of the section she is given absolute dominion of her own property.    The first clause of the second sentence restricts the right of the husband to acquire the property from the wife, even by her consent.    The last clause is as follows: "But such property shall be subject to execution for the payment of the debts of the wife contracted before marriage, and for any debts or liability of her husband, created for necessaries for the wife or family."

There is no rule of construction or analogy to other judicial procedure, which requires or permits us to say that the execution here referred to means one on a judgment against the husband or any other agent of the wife.    The terms "subject to execution" and "exempt from execution" are used in the statute to distinguish between property that is exempt from sale for payment of debts and that which is not exempt, as will be seen in their common use in the laws respecting executions, attachments and homesteads.    The language, "such property shall be subject to execution,"

Gabriel v. Mullen.

simply means that it shall not be exempt from certain debts contracted by the husband for the benefit of the wife. The language in its common use could not be construed to point out the particular proceeding by which the property shall be subjected in satisfaction of debts.

The term "subject to execution" refers to the *status* of the property itself. No reason can be seen for giving the statute a strained and unnatural construction here in order to make it conform to our prejudices concerning the property rights of married women.

Again, it is insisted that the construction placed upon the preceding section 3295 by this court in the case of *Alexander v. Lydick*, 80 Mo. 345, makes the products of the farm of the wife subject to attachment issued against the husband for his own debts created for necessaries for the wife and family. A brief quotation from the opinion in that case will show that the products of the farm were not regarded or treated as being the separate property of the wife. The suit was attachment against the husband for necessaries for the wife. A lot of wheat, the product of her farm, was levied upon. Commissioner MARTIN says: "After, as well as before, the act of 1875, the husband was entitled to enjoy the rents, issues and products of his wife's land. The General Statutes of 1865 exempted them from execution for most of his debts and prohibited him from alienating them without joining with her in a deed. * * * The wheat being the product of the farm and *vesting in him*, subject to the General Statutes of 1865, could not lawfully be claimed by her as against the process and debt in this case."

According to this decision under section 3295, the products of the farm vested in the husband; and under section 3296 it is clear the property in dispute vested absolutely in the wife. The difference is manifest.

It is very clear that the statute will bear the construction placed upon it in case of *Bedsworth v. Bowman, supra.* It is not shown that a different construction would better subserve the business interests of the country, or would operate as a more perfect safeguard and protection to the rights of the wife, or would provide a more speedy and effectual means of enforcing the payment of just liabilities. Many reasons are given in the *Bedsworth case, supra,* for the construction there given the statute, and no sufficient reason appears for overruling that case. SHERWOOD, C. J., and GANTT, J., agree with me.