## MOSS v. WHITZEL.

(Circuit Court, W. D. Missouri, W. D. May 6, 1901.)

1. NATIONAL BANKS—LIABILITY OF STOCKHOLDERS FOR ASSESSMENT—DEFENSES.

The officers of a national bank have no power to incur a liability on the part of such bank after it has gone into liquidation which will be binding on the shareholders, and a judgment on a liability so created, rendered against the bank by collusion of the officers, is not conclusive on the shareholders.

2. SAME—ACTION BY RECEIVER—CONCLUSIVENESS OF ASSESSMENT.

The fact of an assessment by the comptroller upon the stockholders of a national bank does not conclude such stockholders as to the validity of the debts to pay which the assessment is made, and they are entitled to their day in court upon that question before being required to pay the assessment in an action against them by the receiver. Where the defendants in such an action assert the invalidity of a judgment against the bank which is the basis of the assessment, the appropriate procedure would seem to be for them to file a bill in equity to determine the validity of such judgment, and to enjoin the action against them, giving bond for the payment of the judgment therein in case the injunction should be dissolved after hearing.

Altschuler & Leese, for plaintiff.
John D. Milliken, for defendant.

PHILIPS, District Judge. This is an action at law instituted by plaintiff, as receiver for the First National Bank of McPherson, Kan., to recover of the defendant, as a stockholder in an insolvent national bank placed by the comptroller of the currency in charge of the plaintiff as receiver. The second ground of defense to this action is that the liability of the insolvent bank, which recovery from the stockholders is sought to meet, is predicated of a judgment rendered in the state court of Kansas against said national bank in favor of one Bradley, receiver of the First State Bank of McPherson, for the sum of $19,346.75, of which $14,000 remains unpaid. Said judgment is assailed for invalidity on the ground that the transaction or contract on which the judgment was based was made by the officers of said First National Bank after it had gone into voluntary liquidation, and after it had ceased to do any and all business, of whatever kind, except the winding up and settlement of its affairs, and that said liability so attempted to be contracted by said bank officers was without the knowledge or consent of the stockholders of the bank. The

answer alleges collusion between the officers of the two banks, who were practically the same, by which said obligation was obtained; that the stockholders were unable to interpose to defend said action, for the reason that the president and cashier of said respective banks, for corrupt reasons, refused to defend said First National Bank against the action of the receiver of said First State Bank, but, on the contrary, aided and abetted and assisted said receiver in recovering judgment against the First National Bank. The answer further alleges that at the time said action was brought against the said First National Bank the statute of limitations had run against the cause of action; and the answer further alleges that said contract between the two banks upon which said judgment was obtained was without the basis of liability on the part of the First National Bank, and that these stockholders have a good and valid defense to said alleged cause of action.

The demurrer raises two questions: First, that the stockholders of the First National Bank of McPherson are concluded by said judgment in favor of the receiver of said State Bank; and, second, that the action of the comptroller in making the assessment upon the defendant stockholders is conclusive of the validity of said judgment debt. The contention of defendant's counsel is that the defense presented excepts the defendant from the operation of the general rule that a judgment against a corporation concludes the stockholders.

In Richmond v. Irons, 121 U. S. 27, 7 Sup. Ct. 788, 30 L. Ed. 864, it was ruled by the supreme court that when a national bank goes into liquidation it ceases to do business,—"after that there was no authority on the part of the officers of the bank to transact any business in the name of the bank, so as to bind its shareholders, except that which is implied in the duty of liquidation, unless such authority had been expressly conferred by the stockholders,"—and that, as no such express authority appeared in the case, the action of the bank officers in creating the liability of the bank imposed no obligation binding upon the stockholders, and that an adjudication on such liability against the bank did not conclude the stockholders from defending the action on the ground of the invalidity of such liability. This is reaffirmed in the case of Schrader v. Bank, 133 U. S. 67, 10 Sup. Ct. 238, 33 L. Ed. 564. The suit instituted in the foregoing cases was by the creditors of the insolvent bank to subject the stockholders to a double liability under the national banking act, so that the only difference in fact between the two cases is that of a suit instituted by the creditors of the bank to reach this fund in the hands of the stockholders, and the suit at bar, instituted by the receiver under direction of the comptroller of the currency. Both methods of procedure are expressly provided for by statute (Act June 30, 1876; 1 Supp. Rev. St. p. 216). When a suit is instituted by a creditor of the bank against a stockholder, the court, in the exercise of its equity powers, proceeds to ascertain what sum, within the limits of the stockholder's liability, is due and owing by the bank, and how much the stockholder should be required to contribute. As said by Mr. Justice Matthews, speaking for the court, in Richmond v. Irons, 121 U. S. 48, 7 Sup. Ct. 788, 30 L. Ed. 864:

"As all the shareholders are bound in that way to all the creditors, any proceeding to enforce this liability must be such as from its nature would enable the court to ascertain for what the stockholders ought to be made liable, to whom, and in what proportion as respects each other."

And inasmuch as the stockholder in resistance of a suit by a creditor is permitted to show that the judgment against the bank which the stockholder is thus called on to pay is based on an assumption by the officers of the bank after the bank had gone into voluntary liquidation, and therefore the consideration for the judgment was invalid, and that the judgment thereon between the creditor and the bank does not conclude the stockholder, it is hard to comprehend why the same measure of protection, under like conditions, should not be accorded to the stockholder when sued by the receiver acting under the comptroller. The distinction made by plaintiff's counsel is based upon the language of Mr. Justice Swayne in Kennedy v. Gibson, 8 Wall. 498–505, 19 L. Ed. 476, which is the leading case first discussed by the supreme court under the statute authorizing the comptroller to appoint a receiver and make an assessment upon the stockholders. This language is as follows:

"It is for the comptroller to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability, and whether the whole or a part, and, if only a part, how much, shall be collected. These questions are referred to his judgment and discretion, and his determination is conclusive. The stockholders cannot controvert it. It is not to be questioned in the litigation that may ensue."

This has been reasserted in subsequent cases by the expressions that:

"Former decisions of this court have ruled that the determination of the comptroller of the currency and his order to the receiver are conclusive of the extent to which the liability of stockholders of insolvent banks may be enforced in suits against such stockholders." Bank v. Case, 99 U. S. 634, 635, 25 L. Ed. 448.

And in Casey v. Galli, 94 U. S. 677, 24 L. Ed. 168, the court, referring to the case of Kennedy v. Gibson, supra, said:

"It is there said that the amount to be paid rests in the judgment and discretion of the comptroller; that his determination cannot be controverted by the stockholders in suits against them."

These rulings go no further than what the language implies, and the language must be restrained to the subject-matter under consideration. The sense is that whether or not an assessment on the stockholder shall be made, and the amount thereof, in the first instance, are solely matters of administrative policy and determination, and are addressed to the discretion of the comptroller. But the supreme court has not held that a stockholder, when sued by the receiver, is precluded from defending on the ground that he is not a stockholder, or that he owes nothing as such stockholder, or that there is in fact no debt or obligation of the bank existing at the time of the suit against the stockholder. If this defense is not permitted to the stockholder when called upon to pay an assessment based upon such judgment not conclusive against him, when, where, and how is he to find relief from the unjust exaction demanded of him? He has not hitherto had his day in court. He had no hearing before the

comptroller prior to the assessment. The statute makes no provision for such hearing before the comptroller. The comptroller acts upon reports laid before him by the receiver respecting the liabilities of the bank and its assets. On this ex parte showing he decides as to the necessity and amount of the assessment. This action of his is not reviewable. If the stockholder when sued by the receiver stands mute and suffers judgment to go by default, has he not had his day in court? Could he pay the judgment against him, and then have any standing anywhere in court to restrain the receiver from paying over the fund to the judgment creditor of the bank? It is said that the statute provides that, if there is any surplus in the hands of the receiver after the debts of the insolvent bank are paid, it would go back, pro rata, to the stockholders who paid their assessment. This would afford very little consolation to the stockholder after the money collected from him had been paid over in satisfaction of the debt for which the stockholder is not in law and conscience bound. On the other hand, the receiver (so says the supreme court) "represents both the creditors and the association." Kennedy v. Gibson, 8 Wall. 506, 19 L. Ed. 476. And therefore the judgment against him in this action would conclude him both as to the receiver and the creditor. Cromwell v. Sac. Co., 94 U. S. 351, 24 L. Ed. 195. It seems to me that, to sustain the contention of plaintiff, the court must read into the statute not only that congress intended that the comptroller should be the exclusive judge as to when an assessment on the shareholders should be made, and the amount thereof, but that he is also so far clothed with judicial functions as to conclude the shareholder from contesting the fact as to the validity or existence of any liability which the property of the shareholder is taxed to pay. This would carry the representative character of the receiver beyond what the supreme court has said,—that he represents the creditors and the association,—by holding that he also represents the shareholders, when called upon to pay the assessment. It seems to me that this would overturn the maxim that every man is entitled to his day in court, and would violate the fifth amendment to the federal constitution, in depriving the shareholder of property "without due process of law." While the phrase "due process of law," as applied in this country, is more or less controlled by its application to the facts and conditions of the particular case, yet in its universality it implies the right of the person to be affected by a judicial proceeding against him "to be present before the tribunal which pronounces judgment upon the question of life, liberty, or property, in its most comprehensive sense; to be heard by testimony or otherwise, and to have the right of controverting by proof every material fact which bears on the question of right in the matter involved. If any question of fact or liability be conclusively presumed against him, this is not due process of law." Holden v. Hardy, 169 U. S. 366, 18 Sup. Ct. 383, 42 L. Ed. 780; Zeigler v. Railroad Co., 58 Ala. 599. "It is essential to due process of law that there shall not only be notice of the time and place for the hearing, but, what is more important, that there shall be a tribunal clothed with power by methods and rules prescribed by law to hear and determine the question involved." Charles v. City

of Marion (C. C.) 98 Fed. 166. As applied to the conditions under which the comptroller makes the assessment, and the right of the shareholder when sued to contest the existence of the debts which constitute the basis of the assessment, the distinction drawn by the court in Gabriel v. Mullen, 111 Mo. 119–124, 19 S. W. 1099, is not inapplicable. The statute of the state provided that the wife's personalty should be her separate property, and shall not be liable to be taken for the debts of her husband, but shall be subject to execution for any of the debts of the husband for necessaries for the wife and family. While the court held that this separate property of hers might be seized on execution on a judgment against the husband alone, it also held that the wife, notwithstanding, had the right to a trial of the issue whether or not the execution debt was in fact created for such necessaries, and that she is not concluded on that issue by a judgment against her husband to which she is not a party. It occurs to the court that the spirit of the statute authorizing the comptroller to order an assessment and determine the amount thereof will be best observed, and the ultimate rights of the creditors and stockholders will be best subserved, if, instead of interposing this defense at law, the effect of which is to avoid paying any assessment whatever, the defendant would file herein a cross bill in equity setting up the pendency of the action at law, and the grounds of relief sought by him in detail, according to equity practice, asking that the action at law be stayed until the rights of the parties are determined in the equitable proceeding. The court could stay the suit at law until the termination of the proceeding in equity; the complainant in the cross bill tendering therewith a bond, to be approved by the court, conditioned that, in the event of the dissolution of the injunction, judgment for the amount of the assessment against him, with interest and costs, might go against the principal and sureties on the bond. After much consideration, this seems to the court to be the better course of procedure, as applied to the situation of this controversy. Springfield Mill. Co. v. Barnard & Leas Mfg. Co., 81 Fed. 261, 26 C. C. A. 389. If the defendant sees fit to adopt this suggestion of the court, he will be given 10 days in which to file such cross bill and tender such bond.

NOTE. After the filing of this opinion the suit was compromised.