CHARLES E. LITTLEFIELD, ATTORNEY GENERAL,
SETH CHANDLER, RELATOR,

*vs.*

WILLIAM H. NEWELL.

Androscoggin.    Opinion January 24, 1893.

*Quo Warranto.    False Returns.    Evidence.*

In *quo warranto*, the defendant is summoned to show by what authority he holds an office.   He usually does so by showing his certificate of election or commission, or other document appointing him to office.   When these are shown, regular in form, coming from the proper authority, good title to the office is shown, until impeached.   This may be done in cases of election, by showing fraudulent ballots, sufficient in number to change the result, or by showing that the certificate of election is false and fraudulent; and, when shown to be false and fraudulent, its effect is absolutely destroyed, and other evidence must be produced showing an election by honest votes, or the office surrendered.

Where the Attorney General offered to show that the returns of a ward were false and fraudulent, and without the vote of that ward the defendant did not apear to have been elected : *Held*; The offer should have been granted.

ON EXCEPTIONS.

This was a *quo warranto* proceeding, brought to try the title of the respondent to the office of Mayor of the City of Lewiston.

The Attorney General in his replication to the respondent's answer alleges among other things the following facts : . . . "That after the breaking of said ballot box as aforesaid, during said election, a large number of illegal ballots were deposited therein by the knowledge, consent, and fraudulent connivance of said ward officers. . . . That for a large portion of said day of election, the check list of said ward five was out of the possession of said ward clerk and was in the possession of one Provost who was entirely without right or authority to have the same, and that while the same was so in his possession and, at other times during said day a large number of persons voted whose names were not checked by the ward clerk in the manner provided by law. . . . That while said ballots were being counted, the ward clerk unlawfully checked names upon the check list of said ward of a large number of persons who had not voted

therein, and thereafter, willfully and with the intent to falsify said election and for the benefit of said Wm. H. Newell and with the knowledge and connivance of the warden of said ward, made out and returned to the city clerk of said city a false and fraudulent certificate of the ballots legally received in said ward five at said election, and therein certified as voting in said ward at said election a great number of persons in excess of the number actually voting therein, to wit: more than a hundred votes."

*Savage and Oakes, and Swasey and Briggs*, for plaintiff.

The petitioner had two courses open to meet the respondent's *prima facie* case.

First: To contradict the facts therein stated by showing the actual vote to be different from the canvassed return and to differ sufficiently to change the result of the election, by direct proof of the number and kind of ballots thrown.

Second: To destroy the value of the respondent's evidence by showing that the document purporting to prove the case was untrue, valueless and void.

Fraud of election officers, making the returns uncertain, invalidates the returns, and makes the certificate valueless as evidence. This does not conflict with the general rule, stated in *Prince* v. *Skillin*, 71 Maine, 361, that the mere fact that illegal votes were received, will not affect the election or render it void, unless the number is great enough to change the majority. Such fraud does not invalidate the legal votes cast, but by destroying the presumption of correctness of certificate makes it necessary that any person who claims any benefit from the votes shall prove them by other evidence, and where no proof is offered, and the frauds are of such a character that the correct vote cannot be determined, the return of the poll will be rejected. *People* v. *Judson*, 55 N. Y. 525 (14 Am. Rep. 312,); *People* v. *Thatcher*, 7 Lans. 274; *Russell* v. *State*, 11 Kan. 308; *Maun* v. *Cassidy*, 1 Brewst. (Penn.) 11; *Judkins* v. *Hill*, 50 N. H. 140; *Thompson* v. *Ewing*, 1 Brewst. 67; *Weaver* v. *Given*, 1 Brewst. 140; *Littlefield* v. *Green*, Brightly El. Cases, 493; *Knox Co.* v. *Davis*, 63 Ill. 405; *Knowles* v.

*Yates,* 31 Cal. 82 ; *Re Wheelock,* 82 Penn, 297 ; *State* v. *Field,* 14 Wis. 122 ; *Patten* v. *Coates,* 41 Ark. 111 ; *McKewes* v. *Whitten,* N. Y. Cont. El. Cases, 430 ; *McLewd* v. *Halpine,* N. Y. Cont. El. Cases 439 ; *Knox* v. *Blair,* 2 Cong. Election Cases, 526 ; *Washburn* v. *Voorhees,* 3 Cong. Election Cases, 54 ; *Dodge* v. *Brooks,* 3 Cong. Election Cases, 78 ; *Covode* v. *Foster,* 3 Cong. Election Cases, 603 ; *Finley* v. *Wells,* 4 Cong. Election Cases, 389 ; *Finley* v. *Bisbee,* 5 Cong. Election Cases, 74 ;. *Lee* v. *Richardson,* 6 Cong. Election Cases, 520 ; *Lowe* v. *Wheeler,* 6 Cong. Election Cases, 83 ; *Lynch* v. *Chalmers,* 6: Cong. Election Cases, 358 ; *Bisbee* v. *Finley,* 6 Cong. Election Cases, 191 ; *Smith* v. *Shelley,* 6 Cong. Election Cases, 40 ;. *Mackey* v. *O'Connor,* 6 Cong. Election Cases, 561.

*George C. Wing,* for respondent.

The rules of law applicable to the case are :

1.   The production of returns makes a *prima facie* case.

2.   The burden is upon the relator to show sufficient illegal votes to overcome the apparent majority.

3.   The fact that there are illegal votes, if they do not change the result, does not aid the relator.

4.   The court may go behind the returns ; but it will not do. so until fraud is shown by the relator sufficient in amount to, change the result.

5.   Before the defendant can be compelled to produce other· evidence showing the number of votes received by him,. the returns must be invalidated by the relator.

6.   The law does not presume that the illegal votes were thrown for the successful candidate, but this must be affirmatively proved.

There is nothing to indicate that the relator is in a position to successfully meet any of these propositions, and we therefore submit that the ruling of the presiding justice conforms to the law.

The production of certificates of the election officers is sufficient to make a *prima facie* case for the defendant, and the burden of proof to show fraud is upon the relator.   In *People*

v. *Thatcher*, 55 N. Y. 525, the court said: "The return is the primary evidence of the result of an election, and I assent to the general principle stated by the court for the defendant, that the return is to stand unless impeached, and is to be set aside or corrected only so far as it is shown to be erroneous." See also *People* v. *Perley*, 80 N. Y. 624, to the same point.

"The presumption of law is that the election was honestly conducted, and the burden of proof to show it otherwise is on the petitioner." *Judkins* v. *Hill*, 50 N. H. 142.

It is no objection⁀ to an election that illegal votes were received, unless the illegal votes changed the majority. The mere fact of their existence never avoids an election. *First Parish* v. *Stearns*, 21 Pick. 154; *Prince* v. *Skillin*, 71 Maine, 361 (373); *School District* v. *Gibbs*, 2 Cush. 39; *In ex parte Murphy*, 7 Cow. 153.

We do not controvert the proposition that under certain conditions, the court has the undoubted right to go behind the returns; but it seems that the relator must first show illegal votes sufficient to reduce the apparent majority to a minority. *People* v. *Perley*, 80 N. Y. 624; *People* v. *Cook*, 8 N. Y. 4 Selden, 67; *People* v. *Thatcher*, *supra*; Dillon's Mun. Corp. Vol. 1, § 199; *People* v. *Pease*, 27 N. Y. 47.

HASKELL, J. In *quo warranto*, a defendant may be summoned to show by what authority he holds an office. The burden of showing his title to the office is upon him. He usually sustains it by showing his certificate of election, commission or other document under which he claims the office. When these proofs are shown, regular in form, coming from the proper authority, the title to the office is *prima facie* shown; and, until such evidence is impeached, it stands good. It may be impeached in various ways. It may be shown incorrect, if the office be elective, by proving illegal votes to have been cast. In such case, the proof must go further. It must show a sufficient number of such votes to change the result, else the certificate still shows a valid choice, and the certificate is good until overthrown. It may be impeached by evidence that it is fraud-

ulent; and, *of course,* when shown to be fraudulent and false, its validity is destroyed; its probative force is gone; it proves nothing; leaving the holder of it in the same situation as if he had no certificate of his election and had produced none. The burden, therefore, that was originally upon him to show title to the office, still remaining, must be met; and when it cannot be met by a valid certificate of title, that is *prima facie,* it must be met with other proof that shows a valid election or appointment to the office. The authorities cited at the bar, sustain these views and need not be reviewed.

In the present case, the defendant answered that he was lawfully elected Mayor of Lewiston. He pleads the usual certificate of election to the office and his qualification thereto and entry into the same. The certificates, however, show that without the vote of ward five he was not elected.

The relator, among other things, replied that the certificate of votes cast in ward five was false and fraudulent, and that without the vote of ward five, according to the certificate, the defendant was not elected to said office.

Under these pleadings the relator offered to prove, among other things, that the ward officers of ward five " falsely and fraudulently conducted the election proceedings in said election, so as to return for said respondent a larger number of votes than was actually cast for him;" that they "fraudulently made out and returned to the city clerk a false certificate of the number of ballots legally cast in said election."

The presiding justice, thereupon, inquired of the relator's counsel " if they claimed to be able to prove specific instances of illegal votes cast for the respondent, enough in number to equal or exceed his apparent majority, or if they were prepared to prove the number of legal ballots actually cast in that election." The counsel replied "that they were not, and claimed that, upon proof of the frauds alleged as set forth in the foregoing offers to prove, the burden of proof would then be upon the respondent to prove that he received a majority of the actual legal ballots cast in that election, or the actual state of the ballots." This burden was upon the defendant all the time, and

when a ward return failed him, because it was false and fraudulent, he must rely upon other proof in its place and stead.

The presiding justice ruled that "the burden was on the relator to show a sufficient number of fraudulent or illegal votes to overcome the defendant's majority, as shown in the returns, and that inasmuch as it appeared from the statement of facts made by the relator's counsel that the relator was unable to show that number of fraudulent votes, no useful purpose could be subserved by the introduction of the evidence, and that the petition should therefore be dismissed."

This ruling appears to relate to evidence sufficient to overcome honest returns, and is correct in that particular; but it fails to deal with false returns. The presiding justice doubtless assumed that the relator's counsel did not rely upon showing fraudulent and false returns in ward five, leaving defendant without any proof of the vote in that ward, and, therefore, not shown to have been elected. But, on the other hand, relator's counsel, in his answer to the court, did rely upon showing fraudulent returns in ward five, and claimed, in substance, that, on proof of that fact, he would be entitled to judgment; and so he would have been, unless defendant could otherwise show a legal vote in his favor sufficient to elect him. The presiding justice should have called for proof of the fraudulent returns in ward five, instead of dismissing the petition. This was error.

*Exceptions sustained.*

PETERS, C. J., WALTON, LIBBEY and FOSTER, JJ., concurred.