## McKAY v. MINNER, Appellant.

**Division Two, March 5, 1900. \***

**Elections: NECESSITY FOR JUDGE'S INITIALS ON BALLOTS.** The clause in section 4785, R. S. 1889, as amended by the Laws of 1891 (Laws 1891, pp. 135, 136), providing that no judge of election shall deposit any ballot, on which the names or initials of the judges do not appear, is mandatory; and ballots cast, bearing the name or initials of only one judge, can not be counted. (Overruling Bowers v. Smith, 111 Mo. 45.)

Appeal from Barton Circuit Court.—*Hon. H. C. Timmonds,* Judge.

AFFIRMED.

*McAdow & Davis* and *Tucker & Moore* for appellant.

(1) Contestee claims, that section 4785, R. S. 1889, is simply directory. The language, "no judge shall deposit any ballot upon which the names or initials of the judges as hereinbefore provided does not appear," is no more imperative than if the language used had been "the receiving judges, before depositing any ballot, shall see that it is so folded that their indorsement shall appear on the back thereof, as hereinbefore provided." This is what is meant by the legislature. In making the provision in section 4785 it must have been for the single purpose of securing the return of the identical ballot indorsed and handed to the elector as

*Note.—Decided February 20, 1900. Motion for rehearing filed; denied March 5, 1900.

required by section 4780. And in drawing this section it must have been in the mind of the legislator, that the judges of election had already done their duty by indorsing the ballot before handing the same to the voter. It certainly was not in the mind of the legislator, who drew the bill, that the judges of election, could by neglecting or refusing to make the indorsement in the first place, then refuse on the return of the ballot, to receive or deposit it because their names or initials were not indorsed thereon. This would give the judges of election the power to disfranchise whole communities and place the elections in the hands of vicious minded partisans, who might be willing to risk the small punishment for such an act, in order to accomplish the success of their partisan friends. McCrary on Elections (4 Ed.), secs. 190, 225; State v. Russell, 33 Am. St. Rep. 627; Parvine v. Wimberg, 30 N. E. Rep. 792; Lankford v. Gebhart, 130 Mo. 621; Hall v. Shaeucke, 128 Mo. 661; Bowers v. Smith, 111 Mo. 45. The words in this section are not in themselves mandatory. They do not declare that its violation, by the failure of the election judges to properly indorse the ballots, shall avoid the ballot, nor that said ballot shall not be counted, nor is the thing required essential to the secrecy or purity of the election. Words "shall not deposit" are not mandatory and do not mean "shall not be counted." Buckner v. Lynip, 41 Pac. Rep. 762; Meyer v. Van Devanter, 41 Pac. Rep. 60. In all cases in this State in which this court has held a requirement of the election law to be mandatory, the statute has contained the express requirement that where such provisions were not complied with the ballots shall not be counted or that a failure to comply with such requirement shall render the election void, or language equally strong and unmistakeable. West v. Ross, 53 Mo. 350; Ledbetter v. Hall, 62 Mo. 422; State ex rel. v. Frazier, 98 Mo. 426. (2) The voter ought not to be disfranchised for the misconduct of an election

officer, over whose actions he has no control, as to some provision which the legislature has not deemed of sufficient importance to declare that a non-compliance therewith shall avoid the election or render the ballot illegal and void. Hope v. Flentge, 140 Mo. 405; Sanders v. Lacks, 142 Mo. 262.

*John B. Cole, B. G. Thurman, Thos. W. Martin* and *H. W. Timmonds* for respondent.

(1) Where the provisions of a statute are the very essence of the thing which the statute requires to be done, it is imperative and mandatory. To refuse to enforce it would be to repeal the statute by the decisions of the courts instead of by enactment of the law-making power. Hope v. Flentge, 140 Mo. 390; Bowers v. Smith, 111 Mo. 65; Parvin v. Weimberg, 130 Ind. 561. (2) The failure of the two judges of the election having charge of the ballots to write their names or initials upon the back of the ballots with ink or indelible pencil, and hand a ballot so indorsed to the voter who shall prepare it and fold the same so the face of the ballot shall be concealed and the initials of the judges may be seen, and hand the ballot he desires to vote to the judge of election selected to take the ballot, and no judge of election shall deposit any ballot upon which the names or initials of the judges does not appear, constitues the very essence of the thing to be done in order to cast a legal ballot. If these provisions be nullified by the decisions of the court there is nothing left of the Australian ballot system which can be said to be an essential. It has been expressly held by this court as well as by the courts of other states that these and similar provisions of the Australian ballot system are essential. Gaston v. Lamkin, 115 Mo. 35; secs. 4780, 4781, R. S. 1889, as amended by Laws of 1897 at p. 107; Sec. 4785, R. S. 1889, as amended by Laws of 1891 at p. 135; Price v. Lush, 10 Mont. 61; People ex rel. v. Board of Canvassers, 129 N. Y. 395; Talcott v. Philbrick, 59 Conn. 472; West v. Ross,

53 Mo. 35; Ledbetter v. Hall, 62 Mo. 422; Bowers v. Smith, 111 Mo. 74.

SHERWOOD, J.—Election contest between Benton Mc-Kay and James A. Minner for the office of judge of the county court for the western district of Barton county. The outcome of the contest turns on the vote of Central township, in relation to which the evidence shows that Minner had counted for him 136 ballots and McKay had counted for him 94 ballots. Each of these ballots had indorsed on it the names and initials of only one of the judges of the election. But these ballots were nevertheless counted, and so Minner was declared elected and received his certificate, and is now an acting judge of the county court. If the ballots were invalid by reason of the indorsement-fact aforesaid, and should not have been counted, then McKay would, by reason of such invalidity, have had a plurality of 28 votes, which would have entitled him to a certificate. There is no fraud charged in this case, so that the question to be determined is a purely legal one and depends on the meaning to be given to section 4785 of Revised Statutes 1889 as amended by the act of 1891. [Laws 1891, pp. 135, 136.]

Thus amended, that section reads as follows:"[Every ballot shall be numbered in the order in which it shall be received.] No judge of election shall deposit any ballot upon which the names or initials of the judges, as hereinbefore provided for, does not appear." The bracketed words indicate the additional words which the act of 1891 supplies.

As above said the section just quoted was not complied with in regard to the indorsement of the two judges on the ballots in question.

In West v. Ross, 53 Mo. 350, and in Ledbetter v. Hall, 62 Mo. 422, when the then existent statute required that the ballots should be numbered, and declared that "no ballot not numbered shall be counted," it was held these words were man-

datory and that inasmuch as these mandatory words were not obeyed, the election in each contested township in each of the foregoing cases, was invalid, resulting in the vote in each of such townships being thrown out.

Both of the cases aforesaid, by a singular coincidence, came up from Gentry county, the first in 1873, the second in 1876, and in each instance the contest hinged on Miller township, and was based on precisely the same kind of blunder. In Ross's case 251 votes were thus lost, and in Ledbetter's case, 247. No fraud was charged in either of those cases.

In this case, however, a change has occurred in the statute and the statutory words so far as concerns the numbering of the ballots, have ceased to be mandatory. But such mandatory effect and tenor have been transferred to the residue of the section. "No judge of election shall deposit any ballot," etc. Each ballot is to be handed to a judge of election by the voter, and the duty of such judge is to deposit it in the ballot box. That box being the only depository for ballots recognized by the law, is consequently the only one from whence ballots can be counted.

So that, when it is declared by the law that "no judge of election shall deposit any ballot," etc., it is necessarily implied that a ballot not thus deposited shall not be counted. And whatever the law implies, is as much part and parcel of a statute as if expressly and in terms inserted therein. [State ex rel. Lemon v. Board, 108 Mo. loc. cit. 242; State ex rel. v. Laclede Gaslight Co., 102 Mo. loc. cit. 485; State v. Grant, 79 Mo. 122; Sutherland on Stat. Const., sec. 334.]

And the legislature by taking out from section 4672, Revised Statutes 1889, the words, "no ballot not so numbered shall be counted," and placing in the amended act of 1891, *supra*, the words, "every ballot shall be numbered," etc., in lieu thereof, must be presumed to have been conversant with our previous decisions on the original words, and while determined to rob them of their adjudicated and mandatory

character, determined also, at the same time, to make other words in the same amended section, the inheritors of the same quantum of mandatory force.

As showing what presumptions will be indulged relative to legislative knowledge as aforesaid, a leading text-writer says: "It is presumed that the legislature is acquainted with the law; that it has a knowledge of the state of it upon the subjects upon which it legislates; that it is informed of previous legislation and the construction it has received........ A judicial construction of a statute of long standing has force as a precedent from the presumption that the legislature is aware of it, and its silence is a tacit admission that such construction is correct. The re-enactment of a statute after a judicial construction of its meaning is to be regarded as a legislative adoption of the statute as thus construed. So, where the terms of a statute which has received a judicial construction are used in a later statute, whether passed by the legislature of the same state or country, or by that of another, that construction is to be given to the later statute; for if it were intended to exclude any known construction of a previous statute, the legal presumption is that its terms would be so changed as to effectuate that intention." [Sutherland on Stat. Const., sec. 333.]

Taking it then for granted, that the Legislature were aware of our decisions on the topic mentioned, it is easy to see that they ascertained what words we regarded as mandatory, and followed our ruling when they changed the statute so as to substitute for the original words, others equally as mandatory as the original statutory terms were. This view gives an emphasized meaning to the terms employed in the amendatory act, and clearly points out, in the light of the rulings mentioned, the proper meaning to be attached to the words: "No judge of election shall deposit any ballot," etc. In other words, the Legislature evidently intended to arrest the progress of the law-forbidden ballot which did not bear in-

dorsement of the names, etc., of two election judges, by peremptorily forbidding its being deposited; thus accomplishing at an earlier stage than the old law did, the rejection of the ballot, and doing away altogether with uncountable ballots needlessly encumbering the law's repository for legitimate ballots.

In State ex rel. O'Malley v. Lesueur, 103 Mo. 253, the question at issue was whether Lesueur had done right in refusing to file a certificate of nomination tendered by O'Malley which certificate although signed by the presiding officer and secretary in compliance with section 4762, Revised Statutes 1889, had not, in compliance with section 4757 of the same chapter, been "executed with the formalities prescribed for the execution of an instrument affecting real estate," to wit, had not been acknowledged. And thereupon it was ruled that Lesueur had done nothing but his duty in rejecting an unacknowledged certificate, and so we denied a peremptory writ to compel Lesueur to file such unlawful certificate. The opinion in that case in effect holds, therefore, the words quoted from section 4757, *supra,* to be mandatory.

Thus the law stood, on this subject, as declared by this court and sanctioned by legislative enactment and adoption, until Bowers v. Smith, 111 Mo. 45, came here on appeal; in which it was ruled (by a divided court, however), that although the official ballots used at a municipal election contained the names of nominees of a political party which had not polled at the last previous general election the per cent of the entire vote required by statute, and although the list of names of candidates was not properly certified to the county clerk as required by statute, yet that such ballots should be counted. This ruling was made in the very teeth of statutory provisions declaring that, "Ballots other than those printed by the respective clerks of the county courts according to the provisions of this article shall not be cast or counted in any election" (section 4772, Revised Stat-

utes 1889), and declaring also, by another section of the same article (Art. 3) that: "Every ballot printed under the provisions of this article shall contain the name of every candidate whose nomination for any office specified in the ballot has been certified or filed according to the provisions of this article, and no other names." [Ib. 4773.]

This ruling on the plain words, "shall not be cast or counted in any election," was of course directly opposed to the rulings made in the West-Ross and Ledbetter-Hall cases, *supra*, where such words were held mandatory, and in direct opposition to the O'Malley-Lesueur case, *supra*, where the precedent necessity of a properly acknowledged certificate of nomination was directly ruled. The covert endeavor was made, however, in the majority opinion under review, to show that the notice of contest on these points was insufficient because of stating a legal conclusion, and the words "legally certified" are put in quotation marks as if those were the words used in the notice. But this statement is wholly unfounded, as will be seen by an inspection of the notice of those points on p. 68 of 111 Mo., where all that was supposedly necessary to be pleaded on the subjects mentioned was pleaded in a plain and concise manner, and as well pleaded perhaps as though prepared outside of the rural districts of this State.

Besides all that, it had been previously ruled by one of the concurrent judges in the Bowers' case, who had delivered the opinion in the case of Gumm v. Hubbard, 97 Mo. 311, that no "formal pleadings" were necessary in these cases; that the notices of contest constitute the only pleadings, and that the statute required "every court authorized to determine contested elections, to hear and determine the same in a summary manner, without any formal pleadings." [R. S. 1889, sec. 4710.]

Considering these things we discover that the pleader in Bowers' case did not plead a legal conclusion, and if he had, the rules of "code pleading" not being applicable would not,

under the decision in Gumm v. Hubbard, apply to the notice of contest in the former case. So that, when you come to examine the facts in, and the law applicable to, Bowers' case, you will find that the opinion being discussed is simply an attempt and by no means a strong one, to overrule without expressly doing so, what had theretofore been established by prior decisions and by subsequent legislative sanction and adoption, the doctrines announced in the West-Ross, Ledbetter-Hall and O'Malley-Lesueur cases.

If Bowers' case were the law, the only effect it would have would be to declare that the main and controlling question to be decided in all contested election cases is this: *Were the voters legal voters?* If so, then whether they voted by ballot indorsed as required by law, or *viva voce*; whether they ranged themselves under the banner of a party whose nominees had not had their nominations certified to the county clerk as prescribed by law, or whether they belonged to a party which had not polled one per cent of the entire vote cast at the next preceding general election, or whether the ballots were deposited by the election judges in the ballot box or in their hats or in the waste-basket; all these matters would be of no concern; mere *"innocent irregularities,"* not worthy a moment's attention under a Constitution like ours which declares "that all elections shall be free and open; and no powers, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." [Section 9, art. II.]

We will not sanction a doctrine which necessarily admits of the above absurd and law-breaking consequences. We hold that the words of section 4785 in relation to the indorsement of the ballots by the two judges are mandatory, and maintain that the dissenting opinion in the Bowers' case, which announces views similar to those above expressed, announces the law, and we adhere to them. Although some other courts hold different views from our own, we prefer to adhere to our own rulings, especially as they have become

part of our statutory law by sanction and adoption of our Legislature, and especially also, as they are supported by many courts of the highest respectability, as is shown by citations of many recent adjudications in the brief of counsel for contestant.

We are next brought to consider the case of Zeiler v. Chapman, 54 Mo. 502, much relied on by contestee, which was a case of flagrant fraud, where the registration officer registered thirty votes at the precinct of Dover, and then resigned, and his superior officer refused to appoint any one in his place, and consequently no registration was completed at that precinct. In such circumstances it was properly held that it was out of the power of the registering officers to defeat the will of the people in any such high-handed way, and that consequently, the whole election was void.

As there is no fraud suggested in the case at bar, it would be improper for us by anticipatory utterances to discuss what our course would be were a question of fraud as to the nonindorsement of certain names on the ballots, presented for our consideration.

In conclusion it is proper to say the majority opinion in Hope v. Flentge, 140 Mo. 390, holds that the statute requiring the voter to scratch all the groups or columns on his ticket except one, and to make all his changes, if any, on that one, is mandatory, though no negative or prohibitory words are used, and though no fatal consequences to the ticket are prescribed by the law in case of failure so to scratch the ticket.

This ruling is necessarily antagonistic to that made in Bowers' case, and effectually overrules it, and adding the *similiter*, we affirm the judgment.   All concur.