STATE OF MISSOURI ex rel. JAMES D. RAIN-
WATER, Appellant, v. J. C. ROSS et al., Re-
spondents.*

Springfield Court of Appeals, January 8, 1912. Certified to
Supreme Court, February 5, 1912.

1. LOCAL OPTION ELECTION: Failure to Initial Ballots.  In a
   local option election the failure of the judges of the election in
   one of the wards to endorse their initials on some of the ballots,
   does not vitiate those ballots.  [Opinion of COX, J.]

2. APPEAL AND ERROR: Latest Decision of Supreme Court.  A
   decision by either one of the divisions of the Supreme Court is
   the law of the entire state until overruled and it is the duty
   of the appellate court to follow the latest one.  [Opinion of
   COX, J.]

3. LOCAL OPTION ELECTION: Failure to Lock Ballot Box.  In
   a local option election the fact that one ballot box in one ward
   had no lock and that the ballots were returned to the city
   clerk in this box, does not destroy the entire election of the
   city.  [Opinion of COX, J.]                          —

4. ————: Feeding Voters: Bribery.  In a local option election
   the fact that the ladies of the city had a booth within one
   hundred feet of the polls and furnished eatables to the voters
   in such booth, and displayed on such booth the sign, "Vote 'er
   Dry" would not vitiate such election, and the conduct upon the
   part of the ladies cannot be construed as bribery.  [Opinion of
   COX, J.]

5. ————: Irregularities: Fraud.  Irregularities, fraud or crime
   may avoid an election, but to do so they must be of such a
   character as to at least throw doubt on the question whether
   the result of the election, as declared, is in fact the correct
   result.  In other words, that the election contemplated by the
   law was not in fact held.  [Opinion by COX, J.]

6. ————: Collateral Attack.  Where a city council by a proper
   petition of the voters of said city had acquired jurisdiction over
   the matter of calling and holding a local option election, the

*On motion for rehearing the constitutionality of the Contest
Statute was questioned and for that reason this cause was transferred
to the Supreme Court.

State ex rel. v. Ross et al.

validity of its proceedings thereafter with respect thereto is not subject to collateral attack and after jurisdiction is shown, the presumption follows in favor of the regularity of the subsequent proceedings. [Separate Opinion of NIXON, P. J.]

7. LOCAL OPTION LAW: Prima Facie Established. The adoption of the Local Option Law is prima facie established by the production of a certified copy of the result of the election, as spread upon the records of the city ordering the election, and proof that the requisite subsequent publication of the result was made. [Separate Opinion of NIXON, P. J.]

8. QUO WARRANTO: Election Contest. A proceeding by *quo warranto* is not strictly speaking an election contest between two persons claiming the same office. Such proceedings determine only that the person holding the office is or is not an usurper. It does not adjudge the right to hold an office to be in any one else. [Separate Opinion of NIXON, P. J.]

9. MANDAMUS. Mandamus is an extraordinary remedy and is not applicable when there is another specific remedy. [Separate Opinion of NIXON, P. J.]

10. ELECTION CONTEST: Mandamus: Local Option Election. Where a specific remedy for contesting elections has been provided by statute, that mode alone can be resorted to and the limited remedy of contest by mandamus is superseded whenever the statute provides for a contest of local option elections. [Separate Opinion by NIXON, P. J.]

11. ———: ———: ———: Collateral Attack. The validity of a local option election is not open to impeachment or attack in collateral proceedings, such as an application for a dramshop license, for the reason that a direct remedy has been provided by law and the making of an attack by mandamus to compel the issuance of such license on the grounds that the election is invalid is a collateral impeachment of such election. [Separate Opinion by NIXON, P. J.]

12. STATUTORY CONSTRUCTION. In construing any statute it is proper and often useful to consider the state of the law existing at the time of its enactment as casting light on the intended change made by it. [Separate Opinion by NIXON, P. J.]

13. ELECTION CONTEST: Jurisdiction: Questions to be Decided. The term "contested election" has no technical meaning, and the power to determine contested elections would seem to necessarily carry with it jurisdiction over every possible objection which may under the constitution or any statute be urged against the so-called election. [Separate Opinion by NIXON, P. J.]

Appeal from Jasper Circuit Court.—*Hon. B. G. Thurman,* Judge.

AFFIRMED.

*A. L. Thomas* and *McReynolds & Halliburton* for appellant.

(1) These provisions of the statute are mandatory. Ballots without numbers were counted in the 5th ward, and the ballots in the 5th ward were not sealed up in a package, but were returned loose on a string in an unfastened box, and should not have been counted. West v. Ross, 53 Mo. 350; Ledbetter v. Hull, 62 Mo. 422; Donald v. Lee, 101 Mo. App. 191; McKay v. Minor, 154 Mo. 608. (2) The law governing special elections must be strictly followed. And there must be reasonable notice of time and polling places and where the time and place is to be designated by some board, then notice of time and place must be given by such board. Haddox v. Clark County, 79 Va. 677; Morgan v. Gloucester, 44 N. J. L. 137; People v. Weller, 11 Cal. 49; George v. Township, 16 Kas. 88; Stephens v. People, 89 Ill. 337; Westbrook v. Rosebrough, 14 Cal. 180; Taylor v. Betts, 132 S. W. 162. (3) When fraudulent and corrupt methods in the holding of an election are shown to have been resorted to in any precinct the burden is then cast on those asserting the validity of the election to show that the election was not improperly affected by said means. Littlefield ex rel. v. Newell, 27 Atl. Rep. 156; State ex rel. v. Commissioners, 35 Kas. 640; State v. Marston, 6 Kas. 538; Russell v. State, 11 Kas. 322; State v. Stephens, 23 Kas. 456; Patten v. Coats, 41 Ark. 111; Thompson v. Ewing, 1 Brewster, 67; Wallace v. Simpson, 4 Brewster, 457; People v. Thacher, 55 N. Y. 525; Howard v. Cooper, Contested Elections in Congress, 1834, 1865,

p. 275; Blair v. Barrett, Contested Elections in Congress, p. 308; Reed v. Julian, Contested Elections in Congress, p. 821; McCrary on Elections, sec. 436. (4) Appellant maintains that there is no valid statute in this state providing for the contest of a local option election. State v. Fulks, 207 Mo. 26; Williams v. Railroad, 233 Mo. 666; State v. Rollins, 231 Mo. 544; St. Louis v. Teifel, 42 Mo. 578; Johnson v. Spicer, 107 N. Y. 185; State v. Murray, 41 Minn. 123; Ryerson v. Utley, 16 Mich. 269; Shepherd v. Helmers, 23 Kas. 504; Spier v. Baker, 120 Cal. 370; 26 Am. and Eng. Ency. Law (2 Ed.), 584. (5) Defendant cannot for the first time in the appellate court object to the form of procedure. Nichols v. Stephens, 123 Mo. 86; Carr v. Nichols, 157 U. S. 370; Whitstone v. Shaw, 70 Mo. 575; Bank v. Bank, 69 U. S. 252, 17 Law Ed. 785; Russell v. Stocking, 6 Conn. 236; Railroad v. Bekemeier, 72 Ill. 267; Garland v. Wholeban, 20 Iowa, 271; Emmons v. Lord, 18 Me. 351; Brown v. Waterman, 64 Mass. 117; Smith v. Elder, 3 John (N. Y.) 105; Rank v. Rank, 5 Pa. St. 211.

*W. N. Andrews,* Prosecuting-Attorney, *H. F. Walden,* Assistant Prosecuting-Attorney, and *Shannon & Phelps* for respondents.

(1) With reference to local option elections it is only required of the county court that it shall order an election in the usual voting precinct (Sec. 7238), and the notices of such elections have gone no farther. State ex rel. v. Bird, 108 Mo. App. 167; State ex rel. v. Baldwin, 109 Mo. App. 573; State ex rel. v. Bassett, 133 Mo. App. 366; Gaston v. Lampkin, 115 Mo. 25; O'Laughlin v. Kirkwood, 107 Mo. App. 302. (2) When proceedings under the local option statutes are drawn in question as for sufficiency, we are not disposed to invoke the application of the strict rule of construction by which are usually tested proceedings for the

condemnation of private property. State ex rel. v. Weeks, 38 Mo. App. 573; State v. McCord, 124 Mo. App. 53; State v. McCord, 207 Mo. 523; State v. Swearengen, 128 Mo. App. 605; State v. Kellog, 133 Mo. App. 434; State v. Hitchcock, 124 Mo. App. 103. (3) The opinion of Judge Goode in the case of O'Laughlin v. Kirkwood, 107 Mo. App. 302, is decisive of almost every question raised in this case, and it is in harmony with the authorities generally as to the effect of irregularities on the result of an election, a few of which we respectfully call to the attention of the court. State ex rel. v. Roberts, 153 Mo. 112; Horsefall v. School District, 143 Mo. App. 541; Wheat v. Smith, 50 Ark. 266; Bauer v. Board of Denmark, 122 N. W. (Mich) 121; Seamore v. Tacoma, 33 Pac. (Wash.) 1059; Stearns v. State, 100 Pac. (Okla.) 909; Foster v. Scharff, 16 Ohio State, 532; Dishon v. Smith, 10 Ohio 212; Buchanan v. Graham, 81 S. W. (Tex.) 1237.

COX, J.—This case is the same as State ex rel. Fahran, 160 Mo. App. 682, against same parties just decided by us and involves the same questions with one additional question. On all questions decided in the Fahrman case, we adhere to the rulings there made. The additional point made in this case is that the provisions of the law relative to the conduct of elections were so flagrantly violated that the election was not held in conformity to the law and should be held void for that reason.

This contention is based upon the following facts: That electioneering was done within 100 feet of the polls. That some ballots were counted on which the judges initials were not endorsed. That in one ward one of the ballot boxes used had no lock and the ballots returned to the city clerk were not returned in sealed envelopes, but were returned in this unlocked box. That certain ladies who were interested in securing a majority vote against the sale of intoxicat-

ing liquor established eating booths in less than 100 feet of the polling places, and had a large sign posted on the outside of the booth with the slogan: "Vote 'er dry" printed thereon in large letters; and that all comers to the polls were invited in, and to those who entered, coffee and other eatables were furnished and while eating the voters were importuned to vote dry. These lunches were furnished free to all who would accept them, regardless of how they intended to vote. The evidence disclosed that all of the above alleged irregularities were present in this election, but it failed to show that the result was in any way affected thereby.

The failure of the judges of the election in one ward to endorse their initials on some of the ballots did not vitiate those ballots. It will be observed that the present statute of this state which directs the names or initials of judges to be put upon the ballot before it is delivered to the voter does not prescribe what consequences shall follow a failure to observe this requirement. It has been held by our Supreme Court that such failure renders the ballot invalid and in a contest case such ballot should not be counted. See McKay v. Minner, 154 Mo. 608, 55 S. W. 866. This case was decided in division two on February 20, 1900, and on March 5, 1900, a motion for rehearing was overruled. On March 14, 1900, division one decided the same question the other way, and held that the failure of the election judges to do their duty could not be charged up to the voter and directed that the votes be counted although no initials were endorsed thereon. Hehl v. Guion, 155 Mo. 76, 55 S. W. 1024. A decision by either one of the divisions of the Supreme Court is the law of the entire state until overruled, and it is our duty to follow the latest one. As the decision in the Hehl v. Quion case is of equal authority to the other, and is nine days later in point of time, we must follow it. The fact that one

ballot box in one ward had no lock and that the ballots were returned to the city clerk in this box certainly does not destroy the entire election of the city.

The irregularity which it is most strongly urged should result in the entire election being declared void, is the charge of improper modes of electioneering by the ladies of the city, by their display of a sign ''Vote 'er dry'' on their booth within the 100 feet limit, and furnishing eatables to voters in the booths. We are asked to brand this conduct upon the part of the ladies as wholesale bribery and by reason of it to hold the election void. We are not disposed to give it so vicious a designation. Whatever may be said as to its propriety we are unwilling to brand it as bribery. These women were no doubt moved by honest motives and, being familiar with the common frailties of the human family, were no doubt impressed with the logic of that philosophy which has promulgated the theory that the way to reach a man's heart is through his stomach, and acting upon that principle, they sought to reach the center of the voter's affections by first appealing to his natural love of tempting viands. In doing this, they were simply following the example set by the ordinary politician who, without any thought of exposing himself to a charge of bribery, when a candidate for office, has treated a crowd to watermelons or cigars or drinks or has given a banquet to those whom he hopes to enlist as his supporters. We do not think the facts in this case would warrant us in placing the conduct of these women upon a level with the conduct of a man who bribes the individual voter or who by offer to perform the duties of the office for less than the legal fees induces voters to vote for him as was done in the Collier case, 72 Mo. 13.

Irregularities, fraud, or crime may avoid an election, but to do so they must be of such a character as to, at least, throw doubt on the question whether the

result of the election as declared is in fact the correct result. Where the result of an election has been declared by the proper authority, that result must stand until proof is offered to overthrow it. It is not sufficient to show a state of facts from which it might be inferred that there was a possibility that the returns did not correctly express the will of the voters, but before a party in whose favor the result is declared can be required to show that the matter complained of did not affect the result, the matters complained of, whether they be mere irregularities or actual fraud or crime, must be of such a character that by reason of them it is prima facie shown that the result as declared is incorrect, or that it is impossible to determine what the correct result is. In other words, that the election contemplated by the law was not in fact held. [O'Laughlin v. Kirkwood, 107 Mo. App. 302, 81 S. W. 512; State ex rel. Atty.-Gen. v. Collier, 72 Mo. 13; Banks v. Sergent (Ky.), 48 S. W. 149; Atty.-Gen. ex rel. v. McQuade (Mich.), 53 N. W. 944; State ex rel. Newell v. Purdy, 36 Wis. 213; Littlefield, Atty.-Gen., ex rel. Chandler v. Newell (Me.), 27 Atl. 156; State ex rel. Bradford, Atty.-Gen., v. Board of Commis. (Kan.), 11 Pac. 902; People ex rel. Judson v. Thatcher, 55 N. Y. 525.]

There was no evidence that any body's vote was affected by the alleged irregularities or improper conduct and there can be no question under this evidence that there was an entire failure to impeach the correctness of the returns as made.

We do not think the fact that electioneering was done inside the 100-foot limit should render the election void. Such a rule would put it in the power of evil designed persons who were willing to violate the law in order to defeat an election to accomplish their purpose in defiance of the will of the voters and would turn the control of all elections over to the criminal classes.

We find no irregularities connected with this election which is of so serious a nature as to vitiate the entire election, and the judgment will therefore be affirmed. *Nixon, P. J.,* concurs in the result. *Gray, J.,* not sitting.

## SEPARATE CONCURRING OPINION.

NIXON, P. J.—Having reached the same conclusion in my consideration of this case as my associate, but from a different viewpoint, it seems proper to give the reasons for my conclusions in a separate opinion.

This is a proceeding by mandamus to contest the validity of a local option election held in the city of Carthage, Jasper county, Missouri, on the 3d day of February, 1910. The relator, a citizen of Carthage, possessing all the statutory qualifications required to make him eligible as a dramshop keeper, on the 23d day of January, 1911, duly presented to the county court of Jasper county his petition and affidavit and application for a license to keep a dramshop in said city, and otherwise complied with all the legal requirements. These facts the county court found on examination to be true and so recited of record, but denied the petition of the applicant for a license on the sole ground that the provisions of the Local Option Law were in force in said city of Carthage. The applicant then filed his petition in the circuit court of Jasper county setting up said facts and asking the court to issue an alternative writ of mandamus commanding the judges of the county court to issue him a license or show cause.

It appears from the records of the city council of the city of Carthage that the petition for the local option election was presented to the city council signed by the requisite number of legal voters of the city, asking the said city council to submit to the voters of the city of Carthage the proposition whether or not

spirituous and intoxicating liquors should be sold in
the city. Said city council thereby acquired jurisdic-
tion of the subject-matter of the controversy and of
the petitioners, and the validity of its proceedings
thereafter with respect to the same subject-matter was
not subject to collateral attack. [State v. McCord,
207 Mo. l. c. 527, 106 S. W. 27.] After jurisdiction is
shown, then the presumption follows in favor of the
regularity of the subsequent proceedings. [Baker v.
Underwood, 63 Mo. 384; State ex rel. Gracy v. Bank,
120 Mo. 161, 25 S. W. 372; Agan v. Shannon, 103 Mo.
661, 15 S. W. 757; Bryson v. Johnson County, 100 Mo.
76, 13 S. W. 239.]

The adoption of the Local Option Law is prima
facie established by the production of a certified copy
of the result of the election as spread upon the records
of the city ordering the election and proof that the
requisite subsequent publication of the result was
made—all of which was shown in this case. [State v.
Searcy, 39 Mo. App. 393; State v. Searcy, 111 Mo. 236,
20 S. W. 186.]

What is known as the Local Option Law provides,
among other things, as follows: "The election in this
article provided for, and the result thereof, may be
contested in the same manner as is now provided by
law for the contest of the elections of county officers
in this state by any qualified voter of the municipal
body or of the county in which said local option elec-
tion shall be held by an action to contest as herein
provided, and which shall be brought against the mu-
nicipal body or the county holding said election."
[Sec. 7242, R. S. 1909.]

The Local Option Law, as originally passed (art.
3, chap. 22, R. S. 1899), failed to provide who should
be the contestant and who the contestee in the case
of a contest of a local option election. The validity
of the statute as it then stood came before the Kansas
City Court of Appeals in the case of Kehr v. The City

of Columbia, 136 Mo. App. 322, 116 S. W. 428, in which
that court said: "Sections 7079 and 7030 of the stat-
ute providing for contesting elections for county offi-
cers contemplate that the parties to the contest shall
have been the opposing candidates for the office at the
election so held; and that the one claiming to have
been elected shall be the contestant and the opposite
party, who has been declared elected and has his cer-
tificate to that effect, shall be the contestee." It was
held that at common law proceedings for election con-
tests were unknown; that such contests are purely
statutory, and that the legislative omission to confer
jurisdiction cannot be supplied by judicial construc-
tion; that though the statute confers jurisdiction on
the court to contest local option elections, such juris-
diction could not be enforced under the statute as it
then stood without the court writing something into
its letter that was never contemplated at the time of
its passage; that the legislative oversight to write into
the law who shall be contestants and who contestees
cannot by the court be supplied.

After the publication of the opinion in that case
the Legislature of 1909 proceeded to supply the omis-
sion as to the contestant and contestee by providing
that in any such election any qualified voter of the mu-
nicipal body or of the county in which the local option
election shall be held might contest by an action un-
der said section and that the suit should be brought
against the municipal body or the county holding such
election.

In the absence of any statutory proceeding, the
only remedy in the nature of a contest to determine
the right to an office known to the common law is *quo
warranto,* or in modern times, an information in the
nature of *quo warranto,* whereby upon proper appli-
cation made the court will inquire into the author-
ity by which any person assumes to exercise the func-
tions of a public office, and will oust him in case no

authority is shown.   A proceeding by *quo warranto* is not, strictly speaking, an election contest between two persons claiming the same office; such proceeding determines only that the person holding the office is or is not an usurper; it does not adjudge the right to hold an office to be in any one else.   It is not a contest proper as to which of two persons shall hold an office. But another condition arises when it is sought to contest the election on a proposition.   In such case, there can be no remedy by *quo warranto* for that remedy is applicable only when the right to an office or franchise is involved.   Consequently, if the statute makes no provision for contesting such an election (on a proposition), the issues may be determined by mandamus in certain cases to compel the proper officers to execute the supposed will of the voters.   [15 Cyc. 393.]

Mandamus is an extraordinary remedy and is not applicable when there is another specific remedy. [State ex rel. v. Fletcher, 39 Mo. 388; Mansfield v. Fuller, 50 Mo. 338; State ex rel. v. Macon County Court, 68 Mo. 29; State ex rel. v. Boonville Bridge Co., 206 Mo. 74, 103 S. W. 1052; State ex rel. v. Turner et al., 210 Mo. 77, 107 S. W. 1064.]

Where a specific remedy for contesting elections has been provided by statute, that mode alone can be resorted to.   The mode of contesting prescribed by statute is the exclusive remedy, so that an action at law will not lie under the ordinary jurisdiction of the courts to have the election declared void.   The limited remedy of contest by mandamus is superseded whenever the statute provides for a contest of local option elections.   Furthermore, the validity of a local option election is not open to impeachment or attack in collateral proceedings,—such as an application for a license to sell intoxicating liquors, as was made in this case,—for the reason that a direct remedy has been provided by law; and the making of an attack by mandamus is a collateral impeachment of the elec-

tion. [State ex rel. v. Martin (Fla.), 46 So. 424; Kennon v. Blackburn (Ky.), 104 S. W. 968.] In the case of *People ex rel. v. Hamilton, 58 N. Y. Supp.* 959, the relators made applications for liquor-tax certificates under the liquor tax act, and it was conceded that they had complied with the formalities of the statute. The several county treasurers refused to isssue such certificates on the ground that a majority of the qualified electors of the several towns in which the relators resided had, pursuant to the provisions of section 16 of said liquor tax act, voted against the sale of liquors in their respective towns. The court said: "In the view which I entertain of these proceedings, the legality of the elections in which the vote upon the liquor question was taken in the towns above named cannot be determined herein. . . . The question whether the vote was legally taken or not is entirely collateral to the issue in these proceedings. The legality of such vote much be tested in a direct proceeding in which the court has power to look behind the record, and decide according to the facts upon any essential question." The case of *Robertson v. State,* (*Ind.*), 10 *N. E.* 582, was an information in the nature of *quo warranto* to try the title to the office of lieutenant governor of the state of Indiana. Zollars, J., in his opinion (l. c. 613) states: "His (relator's) success, upon this theory, depends upon the question as to whether or not that election was valid or invalid. The respondent, as stated in the complaint, claims that by virtue of that election he is lieutenant governor, and, as such, entitled to preside over the senate. That claim the relator contests; or, to use the definition of the word 'contest,' that claim he 'calls in question,' 'contends against,' 'controverts,' 'disputes,' 'opposes,' 'resists,' and seeks to 'litigate' in this proceeding. He is 'calling in question,' 'contending against,' 'controverting,' 'disputing,' 'resisting,' 'contesting,' the election of the respondent to the of-

fice of lieutenant governor. To say that the election through which the respondent claims was without authority, that for that reason there was no election in the eye of the law, and that, therefore, the relator is not contesting, or seeking to contest, an election, will not do. Whether or not there was a valid election is the very question in contest." In the case of *Commonwealth v. Jones* (Ky.), 84 S. W. 305, Jones was indicted for the offense of selling unlawfully spirituous liquors by retail in territory where the Local Option Law was in force. The court held (l. c. 307): "Where, as in this case, the validity of the proceedings under which the election was held is attacked collaterally, if a substantial compliance with the provisions of the statute is shown by the petition therefor and the orders entered of record by the county judge, the election will not be declared void." The case of *Underwood v. Commissioners of Fairfield County* (*Conn.*), 35 *Atl.* 274, was an action by mandamus to compel the county commissioners to issue to relator a dramshop keeper's license. The law provided that "the county commissioners of each county may license suitable persons to sell or exchange spirituous and intoxicating liquors in suitable places in those towns within their respective counties in which such licenses can be legally granted." The plaintiff, in due form, made application to the commissioners for a license to sell spirituous and intoxicating liquors in Westport; and they refused to act upon his application for the reason that Westport was then a "no-license" town, as shown by its records, and that they had no power to inquire or to determine whether the ballots cast upon the question of "License" and "No license," were or were not valid legal ballots. They found that plaintiff was "a suitable person to sell such liquors," and that the place described in his petition was a suitable place for the sale of such liquors. It was held (l. c. 275) that the county commissioners in the per-

formance of their duties "were not bound to look beyond the records of the town, in order to determine whether they would or would not grant licenses therein, and the town records in this case justified them in refusing to consider the plaintiff's application for a license." The case of *Kennon v. Blackburn (Ky.)*, 104 S. W. 968, was an action by mandamus to compel the county clerk to issue to relator a dramshop keeper's license. It was held that a local option election resulting in favor of liquor selling, not having been attacked in the manner prescribed by the statute, cannot be collaterally attacked in mandamus to compel the county clerk to issue a license to petitioner. In *State ex rel. v. Martin (Fla.)*, 46 So. 424, the relator applied to the proper authority for a license to sell intoxicating liquors, and being refused, brought an action by mandamus to compel the issuance of a license to him. The Supreme Court of Florida said: "It is the settled rule that mandamus cannot be made the instrument for giving a court jurisdiction of litigation on collateral matters in an irregular way. [2 Spelling on Injunctions & Other Extra. Rem. (2 Ed.), Secs. 1386-1440; High's Extra. Legal Rem. (3 Ed.), Sec. 198.] Another well-settled rule in mandamus is that it should be denied if the party has a specific remedy to which he can resort. If another adequate remedy has been provided by statute, he cannot invoke mandamus. [2 Spelling's Injunc. & Other Extra. Rem., Sec. 1374.] As before stated, the relator's alternative writ shows that his right to the license sought to be coerced thereby depends upon the adjudication of the question of the validity of the alleged local option election. In the absence of an authoritative adjudication of the alleged invalidity of such election, the alternative writ does not show any right in the relator to the license applied for that could be enforced by mandamus. Consequently this collateral question is injected into this proceeding for mandamus, thereby seeking, not only

to coerce the issuance of a license, but to have such election, that stands as an effectual bar to the relator's right to such license, adjudged to be invalid. . . . Our conclusion is that where an election has been held in a county to decide whether the sale of intoxicating liquors shall be prohibited therein, and the canvass of such election has resulted in an official declaration that prohibition in such county has been established thereby, the regularity or validity of such election cannot be inquired into in a proceeding by mandamus whose direct object is to compel the issuance to the relator of a liquor dealer's license, the right to which is based upon the alleged invalidity of such election consequent upon alleged irregularities and illegalities in the conduct thereof; but that in such a case the alleged invalidity of such election must be first judicially established in a proceeding instituted under the provisions of section 1216, General Statutes of 1906 (a provision to contest the election), and then, if the proper officer, when properly applied to, refuses to issue a license to which he is entitled, he can then coerce the issuance of such license by mandamus." The validity of an election held under the Local Option Law is not open to impeachment or attack in collateral proceedings, such as an application for the grant of a license to sell liquor, as in this case. [23 Cyc. 101.]

But it is the adverse contention of the appellant that although the statute authorizes a contest of a local option election, such remedy is not exclusive, and that mandamus is also available as a remedy. To sustain this, our attention is called to the following statement in 23 Cyc. 101: "The local option statutes commonly provide a method of contesting the declared result of an election held thereunder, and make specific provisions as to the courts or boards which shall have jurisdiction of such proceedings, the parties who may institute and defend such a contest, and the grounds

on which a contest may be made. It has been held that the method of contesting the election, prescribed by the statute, is the exclusive remedy, so that an action at law will not lie, under the ordinary jurisdiction of the courts, to have the election declared void.'' It will be seen that this statement relates exclusively to proceedings to contest the adoption of the Local Option Law and holds that when a statute provides for a contest, such remedy is exclusive of mandamus. But it is claimed that the same author subsequently modifies this statement of the law as follows: ''. . . the better opinion, as supported by the apparent weight of authority, is that a special remedy given by statute is merely cumulative and not exclusive of the remedy by *quo warranto*.'' [15 Cyc. 395.] This whole clause is explained by the portion which says that the special remedy given by the statute is merely cumulative and not exclusive of the remedy *by quo warranto,* having no reference whatever to the remedy by mandamus. And it is to be further noted that the author is here treating of a contest of an election by rival claimants to a public office and had no reference whatever to a contest of an election on a proposition, as that subject had already been treated in another paragraph in which the law is stated as follows: ''There can be no remedy by *quo warranto* in contesting an election on a proposition, for that remedy is employed only to test the right to an office or franchise. Consequently if the statute makes no provisions for contesting *such election,* the issues may be determined upon mandamus to compel the proper officers to execute the supposed will of the voters.'' [15 Cyc. 394.] A comparison of the two quotations show that they are entirely consistent and harmonious, and point out that where a statutory contest is provided for, it is exclusive of the remedy by mandamus.

Appellant also claims that his view of the law is supported by the following authorities: Common-

wealth v. Jones (Ky.), 84 S. W. 305; Norman v. Thompson (Tex.), 72 S. W. 62. That these authorities support the view that when a local option election is void, it can be contested by mandamus. As to the former case, we have already cited and quoted from it. The Norman case was a proceeding to contest a local option election under the Texas statute which provided that the notices of the local option election should be posted twelve days prior to the date of the election. It was claimed that the law had not been complied with and that consequently the election was void. It was held that "the contest of an election is a special proceeding authorized by the statute, and the courts are limited in their investigation to such subjects as are specified in the law." And that "the posting of the notices of election not being embraced in the terms of the statute, the failure to post one of such notices for twelve days prior to the election constitutes no ground for a contest of election." The case of State ex rel. v. McGann, 64 Mo. App. 225, is cited as authority for the same proposition. That was an action by mandamus. The relators claimed to have received a large majority of the votes cast for directors at a stockholders' meeting of a private corporation. The respondents served as canvassers of the votes. The alternative writ stated that the votes cast at the election showed that the relators were elected by a large majoriy, and that thereafter one Myers pretending to act as a stockholder for himself and others did illegally, wrongfully and fraudulently, deposit with the inspectors or canvassers, and induced them to receive from him, a second set of ballots which, if counted, would wholly change the result of said election as above stated. The writ then commanded the respondents to show cause why they should not be compelled to cast up and certify the vote first cast. This proceeding was had under the special provisions of the law as to contesting elections

of officers of private corporations (now Secs. 3007 to 3011, R. S. 1909). It was contended that as another remedy than mandamus had been provided in these sections, such remedy was excluded. The court, on examining section 3011 held that such section "expressly provides that the right of appeal shall not authorize a supersedeas in any case of mandamus brought by a stockholder to enforce any common law or statutory right in connection with the corporate elections," and that by the very provisions of the statute itself it was contemplated that the rights of the stockholders in such cases might be enforced by mandamus, notwithstanding it contained other provisions. It will be seen that this statement of the law has no application to the case at bar for the reason that the remedy of mandamus was expressly retained by that statute.

The appellant further claims that the provision for a contest contained in the Local Option Law, having been allowed to remain on the statute books inoperative for several years, the remedy by mandamus in certain classes of local option election cases acquired something like prescriptive rights. The reason why the contest provision remained inoperative is explained by the simple fact that it made no provision for a contestant and contestee and consequently could not be in operation. We know of no rule of construction by which an act of the Legislature, wholly void, can be made a key for its interpretation when subsequently validated by an amendment.

Another rule sought to be applied to this case is that the Legislature did not intend to make the contest of a local option election the exclusive remedy or it would have inserted such a provision in the amended act. In construing any statute it is proper and often useful to consider the state of the law as existing at the time of its enactment as casting light on the in-

161 App.—44

tended change made by it. [Dowdy v. Wamble, 110 Mo. 280, 19 S. W. 489; Gabriel v. Mullen, 111 Mo. 119, 19 S. W. 1099.]

From the authorities herein cited, the Legislature at the time of amending the Local Option Law must have known that the law as declared by text-writers as well as by the courts of many jurisdictions construing statutes like the one the Legislature then had under consideration had generally been held to be that the enactment of a valid provision in a local option statute as to contest was exclusive of a proceeding by mandamus; and if they had intended to make the remedy by mandamus a cumulative one with the remedy by contest, they would have so declared by the amendment.

Many of the states whose statutes contain provisions for contesting local option elections limit the scope of such contest. The contesting of elections belongs to the political branch of the government, and hence an action to contest an election is a special statutory proceeding, and the powers conferred on the courts in such cases must be exercised within the limits and by the methods prescribed by the statute. [Ogburn v. Elmore (Ga.), 51 S. W. 641; 15 Cyc. 393.] The powers conferred by the statute of our state are put on broad ground and without any limit, except the provision that such elections "may be contested in the same manner as is now provided by law for the contest of the elections of county officers in this state." [Sec. 7242, R. S. 1909.]

"The term 'contested election' has no technical or legally defined meaning. An election may be said to be 'contested' whenever an objection is formally urged against it which, if found to be true in fact, would invalidate it. This must be true both as to objections founded upon some constitutional provision as well as upon mere statutory enactment. The primary meaning of the verb 'to contest' as given by Webster,

is 'to make a subject of dispute, contention, or litiga tion; to call in question; to controvert; to oppose; to dispute.' It is further defined as meaning, 'to defend, as a suit or other judicial proceeding; to dispute, or resist, as a claim by due course of law; to litigate.' The power, therefore, to determine contested elections would seem to necessarily carry with it jurisdiction over every possible objection which may, under the constitution or any statute, be urged against the so-called election." [Robertson v. State (Ind.), 10 N. E. 582, 600; Oxford v. Frank (Tex.), 70 S. W. 426.] "And by 'contest' here is meant, we think, a suit in which the validity of the election, or the correct ascertainment of the result thereof, is the subject matter of litigation in a court having jurisdiction to hear and determine such issues." [Clary v. Hurst (Tex.), 138 S. W. 566, 570.]

Jurisdiction is thus conferred by the Legislature upon the courts of this state to determine contested elections and the results thereof and under the terms of the Missouri statute it reaches back to the very initial steps of the election and includes every subsequent step by which the result was finally reached and declared. There is no limitation or restriction as to the scope of the investigation in such statutory contest and it goes *ex vi termini* to the whole election proceeding.

It is important to every community in which a local option election is held that there should be some speedy remedy by which in one action there can be determined the result of the election and thereby bind all interested parties. Such elections, on account of the magnitude of the interests involved, are necessarily attended with more or less excitement in the community, and it becomes important that the result should be finally put to rest in order that those engaged in the duty of enforcing the criminal laws, as well as those who desire to engage in the liquor traffic, should

be speedily informed of the final result of the election. For this purpose, a contest as provided by the statute affords an adequate and satisfactory remedy by which in one action and by one judgment the whole matter can be settled.

It follows from these conclusions that the remedy by mandamus in this case was superseded by the provisions of the law in regard to contested elections and that the court had no jurisdiction by mandamus to contest the local option election; but as the judgment was for the right party, it should be affirmed.